No. 23-55810

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

HODL LAW, PLLC,

*Plaintiff - Appellant,*

v.

U.S. SECURITIES & EXCHANGE COMMISSION,

*Defendant - Appellee.*

On appeal from the United States District Court
for the Southern District of California
No. 3:22-cv-01832
Hon. M. James Lorenz

**APPELLANT'S OPENING BRIEF**

Frederick A. Rispoli (SBN # 321794)
Hodl Law Cali, APC
27762 Antonio Parkway
Suite L-1
Ladera Ranch, CA 92694
(213) 292-5200
Filing@HodlLaw.org

Attorney for Plaintiff - Appellant
HODL LAW, PLLC

## Corporate Disclosure Statement

Pursuant to Fed. R. App. P. 26.1, **Plaintiff - Appellant, HODL LAW, PLLC** makes the following disclosures:

1. For non-governmental corporate parties please list all parent corporations:

None.

2. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None.

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None.


Dated: November 27, 2023          By: /s/ Fred Rispoli


i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS ..............................................................ii

TABLE OF AUTHORITIES ........................................................iv

APPELLANT'S OPENING BRIEF ...........................................1

I.   JURISDICTIONAL STATEMENT .................................1

   A.   Jurisdiction in the District Court..............................1

   B.   Jurisdiction in the Ninth Circuit Court of Appeals...................1

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........2

III. STATEMENT OF THE CASE. ......................................2

   A.   The Ethereum Network and Ether Digital Currency
        Unit and Hodl Law's Use of the Same. ....................3

   B.   The SEC's Behavior with respect to Digital Assets. ................4

        1.   The SEC disclaimed the authority over the
             Ethereum Network and Ether DCU that it now
             asserts it has. ...........................................5

        2.   Congress does not accept that the SEC has the
             authority it claims....................................7

        3.   Other federal agencies do not accept that the SEC
             has the authority over the Ethereum Network and
             Ether DCU...............................................8

        4.   Other federal courts have questioned whether the
             SEC has the authority it claims. ..........................9

   C.   When the SEC decides to attack a particular DCU for
        the first time in a lawsuit, its value declines
        immediately and substantively. .............................10

   D.   The Pleadings and The District Court's Order
        Granting the SEC's Motion to Dismiss. ...................10

IV.  SUMMARY OF THE ARGUMENT...........................11

V.   ARGUMENT..........................................................12

A. The Standard Of Review is De Novo For Both Issues.............13

B. The District Court Erred In Holding Hodl Law Does Not Have Standing Under This Circuit's "Firm Prediction" Rule. .......................................................15

    1. Lack of enforcement against Hodl Law is not determinative of standing and the SEC's prior enforcement actions demonstrate the danger to Hodl Law. ...............................................................18

    2. The SEC has consistently failed to disavow application of the Securities Act to the Ethereum Network and Ether DCU. ......................................25

C. First and Fifth Amendment Violations Also Provide Hodl Law With Standing. .........................................26

D. Hodl Law's Complaint is not only constitutionally ripe for adjudication, but also prudentially ripe. ...................28

    1. The fitness of the issue for review necessitates judicial decision. .......................................................28

    2. Hodl Law faces significant hardship without a judicial decision. .......................................................31

E. APA Does Not Apply Because, Under the Major Questions Doctrine, the SEC has no jurisdiction over a software network .............................................34

F. The District Court Erred In Denying Leave To Amend For Constitutional Claims. .........................................39

VI. CONCLUSION ....................................................40

CERTIFICATE OF COMPLIANCE .......................................42

CERTIFICATE OF SERVICE .............................................43

# TABLE OF AUTHORITIES

Page

**Cases:**

*AE ex rel. Hernandez*
666 F.3d 631 (9th Cir. 2012) ............................................... 39

*Biden v. Nebraska*
143 S.Ct. 2355 (2023) ....................................................... 36

*California Pro-Life Council, Inc. v. Getman*
328 F.3d 1088 (9th Cir. 2003) ........................................... 15

*Chang v. United States*
327 F.3d 911 (9th Cir. 2003) ............................................. 17

*Cohen v. ConAgra Brands, Inc.*
16 F.4th 1283 (9th Cir. 2021) ........................................... 15

*Colwell v. Dep't of Health & Human Servs.*
558 F.3d 1112 (9th Cir. 2009) ........................................... 14

*Doe v. Aetna, Inc.*
2016 WL 1028363 (S.D. Cal. Mar. 15, 2016) ................... 32

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*
438 U.S. 59 (1978) ............................................................ 27

*Eastern Enters. v. Apfel*
524 U.S. 498 (1998) .......................................................... 27

*F.C.C. v. Fox Television Stations, Inc.*
567 U.S. 239 (2012) ........................................................... 2

*FDA v. Brown & Williamson Tobacco Corp.*
529 U.S. 120 (2000) .......................................................... 36

*Fordyce v. City of Seattle*
55 F.3d 436 (9th Cir. 1995) ............................................... 25

*Full Circle of Living & Dying v. Sanchez*
2020 WL 771420 (E.D. Cal. Dec. 29, 2020) ..................... 32

*Grayscale Invs., LLC v. Sec. & Exch. Comm'n*
82 F.4th 1239 (D.C. Cir. 2023) ......................................... 38

iv

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*
   896 F.2d 1542 (9th Cir. 1989) ........................................................ 12

*Havasupai Tribe v. Provencio*
   906 F.3d 1155 (9th Cir. 2018) ........................................................ 28

*Immigrant Assistance Project of Los Angeles Cnty. Fed'n of*
   *Labor (AFL-CIO) v. INS*
   306 F.3d 842 (9th Cir. 2002) ........................................................ 16

*In re Coleman*
   560 F.3d 1000 (9th Cir. 2009) ........................................................ 15

*Jones v. Sec. & Exch. Comm'n*
   298 U.S. 1 (1936) ........................................................ 3

*Kiser v. Reitz*
   765 F.3d 601 (6th Cir. 2014) ........................................................ 24, 26

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*
   723 F.2d 1173 (5th Cir. 1984) ........................................................ 13

*LSO, Ltd. v. Stroh*
   205 F.3d 1146 (9th Cir. 2000) ........................................................ 19, 24, 25, 26

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ........................................................ 35

*McAllen Grace Brethren Church v. Salazar*
   764 F.3d 465 (5th Cir. 2014) ........................................................ 24

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*
   676 F.3d 829 (9th Cir. 2012) ........................................................ 28, 30

*Parents for Priv. v. Barr*
   949 F.3d 1210 (9th Cir. 2020) ........................................................ 39

*Reno v. Catholic Soc. Servs., Inc.*
   509 U.S. 43 (1993) ........................................................ 16

*SEC v. Ripple Labs, Inc.*
   2022 WL 2705396 (S.D.N.Y. July 12, 2022) ........................................................ 6, 37

*SEC v. Ripple Labs, Inc.*
   2023 WL 3477552 (S.D.N.Y. May 16, 2023) ........................................................ 19

*SEC v. Ripple Labs, Inc.*
   2023 WL 4507900 (S.D.N.Y. July 13, 2023) ........................................................ 21

*SEC v. Telegram Grp., Inc.*
  448 F. Supp.3d 352 (S.D.N.Y. 2020)  ................................. 21

*Skyline Wesleyan Church v. California Dep't of Manage Care*
  968 F.3d 738 (9th Cir. 2020)  ..................................... 31

*Standard Ins. Co. v. Saklad*
  127 F.3d 1179 (9th Cir. 1997)  .................................... 13

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009)  ....................... 21, 28, 31, 32

*Susan B. Anthony List v. Driehaus*
  573 U.S. 149 (2014)  ............................................. 32

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*
  368 F.3d 1053 (9th Cir. 2004)  ................................... 39

*West Virginia v. EPA*
  142 S.Ct. 2587 (2022)  ................................. 35, 36, 38

*Wochos v. Tesla, Inc.*
  985 F.3d 1180 (9th Cir. 2021)  ................................... 15

*Wolfson v. Brammer*
  616 F.3d 1045 (9th Cir. 2010)  ................................... 21

**Statutes:**

15 U.S.C. § 77v  ...................................................... 1

15 U.S.C. § 78aa  .................................................... 1

28 U.S.C. § 1291  .................................................... 1

28 U.S.C. § 1331  .................................................... 1

28 U.S.C. § 2107  .................................................... 2

28 U.S.C. § 2201  .................................................... 1

**Constitutions:**

U.S. Const., 1st Amend.  ................................... 14, 26, 40

U.S. Const., 5th Amend.  ............................... 14, 26, 40, 41

**Court Rules:**

Fed. R. Civ. P. 4 ........................................................................... 2

Fed. R. Civ. P. 12 ........................................................................ 10

Fed. R. Civ. P. 15 ........................................................................ 39

Fed. R. Civ. P. 57 ......................................................................... 1

**Other:**

Clarity for Payment Stablecoins Act of 2023, H.R. 4766, 118th
    Cong. (2023), https://tinyurl.com/yc2nmpsx .................................... 7

Crypto-Currency Act of 2020, H.R. 6154, 116th Cong. (2020),
    https://tinyurl.com/589kheax ............................................... 7

*Deaton, et al. v. SEC*, Case No. 1:21-cv-00001
    (D. R.I. Mar. 5, 2021) ....................................................... 18

Digital Commodities Consumer Protection Act of 2022, S. 4760,
    117th Cong. (2022), https://tinyurl.com/bdd7r5p3 ........................... 7

Digital Commodity Exchange Act of 2022, H.R. 7614, 117th
    Cong. (2022), https://tinyurl.com/45cnjwyd ................................ 7

Eliminate Barriers to Innovation Act of 2021, H.R. 1602, 117th
    Cong. (2021), https://tinyurl.com/2mx3mt8m ............................... 7

Financial Innovation and Technology for the 21st Century Act,
    H.R. 4763, 118th Cong. (2023), https://tinyurl.com/yc38dmjn ......... 7

*Game Stopped? Who Wins and Loses When Short Sellers,
    Social Media, and Retail Investors Collide, Part III*, Hr'g
    Before the U.S. H. Fin. Servs. Comm., 117th Cong. 12 (May
    6, 2021) (statement of SEC Chair Gary Gensler),
    https://tinyurl.com/mtrnkbn2 ............................................. 37

Hester M. Peirce, Comm'r, SEC, *Outdated:Remarks Before the
    Digital Assets at Duke Conference* (Jan. 20, 2023),
    https://www.sec.gov/news/speech/peirce-remarks-duke-
    conference-012023. ...................................................... 37

Lummis-Gillibrand Responsible Financial Innovation Act, S.
    2281, 118th Cong. (2023), https://tinyurl.com/3yx8f5hm ................. 7

*SEC v. Binance Holdings Ltd.*, Civ. No. 23–1599 (D.D.C. June
    5, 2023) ................................................................. 20

*SEC v. Bittrex*, No. 2:23-cv-580 (W.D. Wash April 17, 2023) ............. 20

*SEC v. Coinbase, Inc.*, No. 23-cv-4738
(S.D.N.Y. June 6, 2023) ........................................................ 8, 20, 34

*SEC v. Payward, Inc.*, Case No. 3:23-cv-6003
(N.D. Cal. Nov. 20, 2023) .................................................... 22

*SEC v. Payward, Inc., et al.*, Case No. 3:23-cv-06003
(N.D. Cal. Nov. 20, 2023) .................................................... 20

The Token Taxonomy Act of 2021, H.R. 1628, 117th Cong.
(2021), https://tinyurl.com/bezac866 ................................ 7

U.S. House Financial Services Committee, *Oversight of the
Securities and Exchange Commission* (April 18, 2023)
(beginning at 43:14 through 47:00), *available at*
https://www.youtube.com/watch?v=DmipafFCli0&t=1s ................ 37

U.S. Virtual Currency Market and Regulatory Competitiveness
Act of 2019, H.R. 923, 116th Cong. (2019),
https://tinyurl.com/3hscvaj2 ............................................... 8

Wright, Miller & Kane, *Federal Practice and Procedure: Civil
2d* § 2767 .............................................................................. 13

X.com, U.S. Senator Cynthia Lummis, *available at*
https://twitter.com/SenLummis/status/
1726768494069354545 (last accessed Nov. 21, 2023) .................... 23

## Appellant's Opening Brief

## I. JURISDICTIONAL STATEMENT

### A. Jurisdiction in the District Court

Plaintiff-Appellant Hodl Law, PLLC ("Hodl Law") filed the underlying Complaint in this action on November 21, 2022, in the United States District Court for the Southern District of California. [2-ER-18] The District Court had jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, 28 U.S.C. § 1331, and the Securities Act of 1933, 15 U.S.C. §§ 77v and 78aa. [2-ER-20–21]

Hodl Law is an Arizona professional limited liability company that engages in the practice of law with respect to digital assets and cryptocurrencies. [2-ER-21] The Complaint seeks declaratory relief that its transactional activity on the Ethereum Network and use of the Ether digital currency unit ("DCU") do not implicate the Securities Act of 1933. [2-ER-20]

### B. Jurisdiction in the Ninth Circuit Court of Appeals

The Ninth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. This appeal seeks reversal of an order granting Defendant Securities and Exchange Commission's Motion To Dismiss

Complaint, which was entered by the District Court on July 28, 2023. [1-ER-2–16] Hodl Law timely appealed that order on September 25, 2023 pursuant to Fed. R. App. P. 4(a)(1)(B)(ii); 28 U.S.C. § 2107(b)(2). [3-ER-342–343]

## II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

There are two issues in this appeal:

(1) Whether Hodl Law, which transacts on the Ethereum Network and owns and uses the Ether DCU, has standing to seek declaratory and injunctive relief that it is not violating federal law by transacting in unregistered securities where the SEC has retracted its 2018 public announcement that the Ethereum Network and Ether DCU are not federal securities.

(2) Whether the District Court erred in denying Hodl Law leave to amend its complaint to address the First and Fifth Amendment constitutional issues raised in its opposition to the Defendant's motion to dismiss, but which the District Court explicitly declined to address.

## III.  STATEMENT OF THE CASE.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S.

239, 253 (2012). When presented with "officialdom unchained" the "courts have always been vigilant" to protect against abuse. *See Jones v. Sec. & Exch. Comm'n*, 298 U.S. 1, 24, 32 (1936).

## A. The Ethereum Network and Ether Digital Currency Unit and Hodl Law's Use of the Same.

Hodl Law asked the District Court to determine whether the Ether digital currency unit ("DCU") and Ethereum Network fall within the ambit of the Federal Securities Act of 1933 (the "Securities Act"). [2-ER-20] The firm is seeking judgment in a similar manner as the SEC has asked district courts to determine in over one hundred federal cases previously regarding other DCUs and digital asset networks. [2-ER-80] After Bitcoin, the Ethereum Network and its native asset, the Ether DCU, have a market capitalization in the hundred of billions of dollars. [2-ER-20]

Plaintiff Hodl Law is a law firm that provides legal services regarding digital assets. [2-ER-18, 21] The firm transacts on the Ethereum Network and uses the Ether DCU. [2-ER-20, 21, 27, 37] Hodl Law played no role in the creation of the Ethereum Network or the Ether DCU. [2-ER-25, 28] Consequently—and critically—Hodl Law's use of the Ethereum Network occurs entirely in the secondary market.

### B. The SEC's Behavior with respect to Digital Assets.

For its regulatory authority over digital assets, the SEC cannot cite any clear congressional authorization. Instead, it relies upon the Securities Act, passed roughly eighty years before the invention of cryptocurrency. The SEC does not contest it has never engaged in the creation of regulations, rulemaking, or official notice-and-comment regarding the security status of any DCU. [2-ER-27, 29, 30, 38] Presently, *the only manner* in which the public can ascertain whether the SEC believes a particular DCU is a security is when the agency files a federal lawsuit alleging such. [2-ER-19, 37, 38]

The Ethereum Network was created in 2015 and from its inception was monitored by the SEC. [2-ER-24–25] From 2015 and onwards, the SEC never issued any rulemaking or guidance on whether use of the network and DCU constitute unregistered securities transactions—it even permitted its employees to freely buy and sell the Ether DCU. [2-ER-25] The SEC received thousands of inquiries from public investors about the agency's belief as to the security status of the Ether DCU, but the SEC refused to answer one single request. [2-ER-25]

### 1. The SEC disclaimed the authority over the Ethereum Network and Ether DCU that it now asserts it has.

Presently, the SEC refuses to state whether its past statements regarding Ethereum in 2018 remain in force or whether it now considers the network or DCU a security. [2-ER-27, 37, 38] In 2018, the SEC publicly disclaimed jurisdiction over the Ethereum Network and Ether DCU and stated neither were subject to securities regulation. [2-ER-31–36] This occurred via a public, billion-dollar market-moving speech by SEC's Director of the Division of Corporate Finance (herein referred to as "the Speech"), wherein the Director expressly proclaimed "based on my understanding of the present state of Ether, the Ethereum [N]etwork and its decentralized structure, **current offers and sales of Ether are not securities transactions**." [2-ER-31–34] Prior to its publication, that speech was circulated amongst the highest officials at the SEC for approval. [2-ER-34–35]

The SEC conceded to the District Court that it now considers any decision on security status to be pending. [2-ER-54–55] It has since disavowed the Speech and refuses to disavow application of the Securities Act to the Ethereum Network and Ether DCU, causing one district court to reprimand the agency for its hypocrisy:

> The hypocrisy in arguing to the Court, on one hand, that the Speech is not relevant to the market's understanding of how or whether the SEC will regulate cryptocurrency, and on the

other hand, that [the SEC Division Director] sought and obtained legal advice from SEC counsel in drafting his Speech, **suggests that the SEC is adopting its litigation position to further its desired goal, and not out of a faithful allegiance to the law**.

*SEC v. Ripple Labs, Inc.*, 2022 WL 2705396, at *3 (S.D.N.Y. July 12, 2022) (emphasis added). [2-ER-36] When the inner machinations of the SEC regarding the Speech were ordered by this same district court to be publicly produced, it revealed substantial collaboration among the highest ranks of SEC officials—including the then-Chair—deciding to unequivocally greenlight an agency decision to exclude the Ethereum Network and Ether DCU from federal securities regulation. [2-ER-269–271]

The SEC Office of General Counsel opined the then-Chair's approval of the decision to exempt Ether DCU from securities regulation would make it "difficult for the agency to take a different position on Ether in the future." [2-ER-285] The deliberations made it clear that the authorization for the Speech was provided by then-SEC Chair Clayton: "If Bill (and/or [Chair Clayton's] office) wants to make a blanket statement that Ether is not a security (barring any changes of thought based on the meeting later this week with [Ethereum creator] Buterin

(or his counsel), we will need to discuss internally and with [senior SEC counsel]." [3-ER-333] The Office of General Counsel even advised "the less detail the better" for the public in the Speech. [3-ER-316][1]

## 2. Congress does not accept that the SEC has the authority it claims.

The present matter before this Court is critically unique precisely because there is significant Congressional opposition to the claimed authority by the SEC over the regulation of digital assets as securities. To date, Congress has considered or is actively considering roughly two dozen legislative bills, most of which would either curtail or divest SEC authority over digital assets.[2] On June 6, 2023, the SEC sued the largest digital asset exchange in the U.S. on allegations it engaged in

---

[1] Then-SEC Chair Clayton would go on to adopt the speech as the SEC's official position on Ether by publicly stating: "Our Corporate Finance Division Director recently further outlined the approach staff takes to evaluate whether a digital asset is a security." [2-ER-271]

[2] *See, e.g.*, Financial Innovation and Technology for the 21st Century Act, H.R. 4763, 118th Cong. (2023), https://tinyurl.com/yc38dmjn; Clarity for Payment Stablecoins Act of 2023, H.R. 4766, 118th Cong. (2023), https://tinyurl.com/yc2nmpsx; Lummis-Gillibrand Responsible Financial Innovation Act, S. 2281, 118th Cong. (2023), https://tinyurl.com/3yx8f5hm; *see also, e.g.*, Digital Commodity Exchange Act of 2022, H.R. 7614, 117th Cong. (2022), https://tinyurl.com/45cnjwyd; Digital Commodities Consumer Protection Act of 2022, S. 4760, 117th Cong. (2022), https://tinyurl.com/bdd7r5p3; The Token Taxonomy Act of 2021, H.R. 1628, 117th Cong. (2021), https://tinyurl.com/bezac866; Eliminate Barriers to Innovation Act of 2021, H.R. 1602, 117th Cong. (2021), https://tinyurl.com/2mx3mt8m; Crypto-Currency Act of 2020, H.R. 6154, 116th Cong. (2020),

unregistered securities transactions via its facilitation of its customers' purchase and sale of same. *SEC v. Coinbase, Inc.*, No. 23-cv-4738, ECF No. 1 (S.D.N.Y. June 6, 2023). The exchange filed a motion for judgment on the pleadings that is pending decision. *Id.*, ECF No. 36 (S.D.N.Y. Aug. 4, 2023). On that same motion, U.S. Senator Lummis took the extraordinary step of filing an *amicus brief* in support of the exchange, arguing the SEC is not authorized by Congress with the power to regulate digital assets. *Id.*, ECF No. 53 (S.D.N.Y. Aug. 11, 2023) at 9 ("Congress has not conferred on the SEC wholesale regulatory power over this industry, and accepting the SEC's theory encroaches on Congress's legislative role"). Earlier this year, U.S. Senator Hickenlooper requested the SEC Chair finally endeavor to engage in *some* regulatory process: "Given the complexity of these issues, and recognizing that some digital assets are securities, others may be commodities . . . a formal regulatory process is needed now." [2-ER-79]

### 3. Other federal agencies do not accept that the SEC has the authority over the Ethereum Network and Ether DCU.

Because no Congressional laws exist regarding Ethereum specifically or digital assets in general, federal agencies have battled for turf.

---

https://tinyurl.com/589kheax; U.S. Virtual Currency Market and Regulatory Competitiveness Act of 2019, H.R. 923, 116th Cong. (2019), https://tinyurl.com/3hscvaj2.

Earlier this year, the Chairman of the Commodity Futures Trading Commission ("CFTC"), testified before the U.S. Senate that the CFTC has complete jurisdiction over the Ethereum Network and Ether DCU—not the SEC—because they are commodities, not securities. [2-ER-114] Since at least October 10, 2019, the CFTC has asserted jurisdiction over the Ethereum Network and Ether DCU. [2-ER-91]

### 4. Other federal courts have questioned whether the SEC has the authority it claims.

The SEC has sought to collaterally assert its jurisdiction over digital assets in a variety of ways aside from direct enforcement actions. As one example, on March 11, 2023, a federal bankruptcy judge had to admonish SEC attorneys when the agency objected to confirmation of a cryptocurrency exchange's debtors' plan because the SEC claimed the DCU at issue, VGX, "had aspects of a security" and the rival digital asset exchange buying Voyager Digital, *could* therefore have been an unregistered securities exchange. [2-ER-116–117] The judge exemplified the concern for the damage potential for debtors that were created by the SEC: "I reject the contention that the Court, and the Debtors, somehow were supposed to figure out for themselves just what 'aspects' of the VGX token might be considered aspects of a 'security.'" [2-ER-117] Judge Wiles found market participants (*i.e.*, those in the similar position of Hodl Law) must act "in a regulatory environment

that at best can be described as highly uncertain," in which "[r]egulators themselves cannot seem to agree as to whether cryptocurrencies are commodities that may subject to regulation by the CFTC, or whether they are securities that are subject to securities laws, or neither, or even on what criteria should be applied in making the decision . . . ." [2-ER-117]

### C. When the SEC decides to attack a particular DCU for the first time in a lawsuit, its value declines immediately and substantively.

Once the SEC targets a DCU in an enforcement lawsuit, which is also the first time it publicly announces its opinion on the security status of the DCU, the value of the DCU immediately and substantially plummets on the filing. [2-ER-80]

### D. The Pleadings and The District Court's Order Granting the SEC's Motion to Dismiss.

Hodl Law seeks declaratory and injunctive relief enjoining the SEC from asserting its limited jurisdiction under the Securities Act regarding Hodl Law's use of the Ethereum Network and Ether DCU. [2-ER-21] The SEC only contested Hodl Law's Complaint on Fed. R. Civ. P. 12(b)(1) grounds. [2-ER-45] The District Court held that "the Court finds no case or actual controversy in the present matter, therefore, declaratory judgment is not warranted. In light of the

speculative nature of Plaintiff's claims, the Court concludes that no modified contention 'consistent with the challenged pleading . . . [will] cure the deficiency,' therefore the motion to dismiss is granted without leave to amend." [1-ER-15] The District Court held "Plaintiff fails to allege an injury in fact or a realistic danger of suffering direct injury as a result of Defendant's conduct." [1-ER-7]

In the context of the Speech, the District Court determined "there is no final action that is effective and final as to Hodl Law regarding the status of the DCU's in question as illustrated by the fact that the SEC announced in a speech that Ethereum Network and Ether DCU's are excluded from reach of the SEC as securities yet the SEC files numerous lawsuits asserting that DCU's are securities." [1-ER-11] Instead, the District Court decided that the SEC's internal discussions that resulted in the Speech's authorization "are commentary that illustrate the ongoing confusion surrounding the status of cryptocurrencies as securities and demonstrates the need for the SEC to issue definitive guidance rather than approaching the issue in piecemeal litigation." [1-ER-12]

## IV.  SUMMARY OF THE ARGUMENT.

The Defendant has been criticized for its regulation-by-lawsuit approach regarding digital assets by other Circuit Courts of Appeal, by the District Court, by other district courts across the country, by sister

federal agencies and by sitting U.S. Congressional members. The randomness and unpredictability in the manner in which the SEC attacks various blockchain networks is strikingly unfair to those who are the networks' users, such as Hodl Law. This is not an acceptable regulatory approach for an emerging technology and asset class and the SEC has never sought to regulate any asset class in its history in this way—no rules, no formal guidance, nothing but lawsuits.

The Defendant has launched multiple enforcement actions against parties in similar positions as Hodl Law. The only difference in the present case is that Hodl Law has the temerity to offensively seek declaratory relief against an untethered federal agency instead of defensively waiting to be sued. Whether a U.S. citizen and/or business entity has standing to seek judicial relief against a federal agency on the same grounds that same agency exclusively relies upon in the context of its asserted regulatory authority (*i.e.*, filing lawsuits) is the question before this Court.

## V. ARGUMENT.

"The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989) (citation omitted). "What is

litigated in such a situation is 'the precise issue which could have been litigated in federal court in a coercive action brought by' the declaratory defendant." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984), *quoting* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2767 at 740. It need only be shown that the declaratory relief defendant *could* bring such a claim, not that it necessarily will do so. *See Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) (in a "classic case" the court "can reposition the parties in a declaratory relief action by asking whether [the court] would have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy").

Hodl Law stands in the same class as other U.S. users of the Ethereum Network: subject to constant public threats and harassment from the SEC about digital assets in which 'following the lawsuits' is the SEC's admitted method of asserting its self-proclaimed authority over the industry. [2-ER-78]

## A. The Standard Of Review is De Novo For Both Issues.

The District Court ruled that "Hodl Law fails to identify a case or controversy between it and the SEC sufficient to demonstrating standing." [1-ER-6] Seemingly important in the District Court's reasoning was that it was only a "possibility" that the SEC might attack the firm in its next regulation-by-lawsuit target and was not persuaded

by the agency's history of using lawsuits as its sole vector for asserting its regulatory authority. [1-ER-6] The District Court recognized no authority exists "compelling Defendant to engage in specific rulemaking, pursue specific regulator approaches, or respond to private parties' request for guidance" but used that evidence against a finding in favor of Hodl Law. [1-ER-6]

The Ninth Circuit will "review *de novo* a district court's dismissal for lack of standing, construing all material allegations in favor of the plaintiff." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). The Court will "also review *de novo* a district court's dismissal for lack of ripeness." *Id.* (citation omitted). Therefore, this Court should examine the issue of standing afresh under the de novo standard of review.

Additionally, the District Court acknowledged that Hodl Law argued "that enforcement against Hodl Law's secondary use of the Ethereum Network and Ether DCU violates its First and Fifth Amendment rights because it uses the Network and DCU in engaging in constitutional protected speech in a digital metaverse, and that the SEC's practice of filing a lawsuit which drives down the value of DCU's constitutes a take of the value of the DCU." [1-ER-9–10] The District Court chose not address Hodl Law's constitutional arguments, however, because "Plaintiff did not raise these arguments in the Complaint, therefore, the Court does not address them here." [1-ER-10] Although Hodl Law

sought leave to amend the Complaint "to satisfy any concerns of the Court, such as . . . the constitutional issues presented by such uses," [2-ER-96] the District Court denied leave to amend the Complaint. [1-ER-15–16]

While the denial of leave to amend is reviewed for an abuse of discretion, this Court must review the question of futility of amendment de novo. *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021).

### B. The District Court Erred In Holding Hodl Law Does Not Have Standing Under This Circuit's "Firm Prediction" Rule.

"The constitutional ripeness of a declaratory judgment action depends on whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (cleaned up). *See also California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093–94 (9th Cir. 2003) ("Whether we frame our jurisdictional inquiry as one of standing or ripeness, the analysis is the same").

When there is a substantial risk that injury will occur to the plaintiff due to the declaratory defendant's actions, a "controversy" sufficient to necessitate declaratory relief may be found in this Circuit under the "firm prediction" rule:

> [I]f . . . 'the court can make a *firm prediction* that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule,' then by logical extension the controversy may be ripe although the plaintiff has not yet applied and been denied, and also does not fall within either of the two exceptions to the ripeness rule.

*Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 861 (9th Cir. 2002), *quoting Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 69 (1993) (O'Connor, concurring). In *Immigration Assistance Project*, the Ninth Circuit held that certain plaintiffs' claims were ripe under the firm prediction rule. *Immigration Assistance Project*, 306 F.3d at 862. There, the plaintiffs sought declaratory relief regarding a government agency's immigration practices. *Id.* The court held the first prong was met—the court could firmly predict that the plaintiff will apply for a benefit—because the plaintiffs "*did*, in fact, apply." *Id.* (emphasis in original). The second prong also was met—the court could firmly predict that the agency will deny the application by virtue of the challenged rule—because the plaintiff's request would almost assuredly be denied. *Id.*

16

Although there are not a substantial number of opinions that deeply analyze the "firm prediction" rule, the case of *Chang v. United States*, 327 F.3d 911 (9th Cir. 2003) is helpful. There, this Circuit applied the rule, affirming the district court's determination that plaintiffs' claims were ripe for review because "the INS has already failed to act upon Plaintiffs' [ ] petitions . . . It is undisputed that Appellants' [ ] petitions will be rejected if the standards of the precedent decisions are applied to them." *Id.* at 922. Here, although the pathway is different the result is the same: Despite petitioning the SEC for an answer (though not an 'application' because none exist) the SEC has chosen to force Hodl Law to wait in perpetuity as it will never give an answer to the question. [2-ER-37] At the same time, the SEC reserves the right to civilly and criminally charge Hodl Law at its leisure. [2-ER-38]

Unlike in *Chang*, there are no statutes, no regulations, and no formal policy statements that allow any member of the public to ascertain the SEC's secret position on whether any digital asset—let alone the Ethereum Network or Ether DCU—are federal securities in the agency's eyes. [2-ER-37–38] Thus, the SEC can argue that Hodl Law has no standing because, if the SEC claims jurisdiction but never reveals its interpretations until it springs a lawsuit, Hodl Law or any other public entity can *never* have standing. But, in keeping with the intent of *Chang* and even *Catholic Social Services*, the SEC has unambiguously demonstrated that the *only* way it will provide public

17

guidance is through federal litigation. In fact, the SEC recognizes the only way it *can* assert its purported authority is by 'testing' it via litigation in the district courts. *See, e.g.*, *Deaton, et al. v. SEC*, Case No. 1:21-cv-00001, ECF No. 11 at 12 (D. R.I. Mar. 5, 2021) (SEC conceding its enforcement lawsuits regarding whether DCUs are securities under federal law represent the "**exclusive method** for testing the validity of the [SEC's allegations a DCU is used as a security]") (emphasis added).

### 1. Lack of enforcement against Hodl Law is not determinative of standing and the SEC's prior enforcement actions demonstrate the danger to Hodl Law.

The District Court held that Hodl Law failed to identify a case or controversy between it and the SEC because "Plaintiff does not claim that the SEC has investigated the Firm, or prosecuted it, but instead alleges that the SEC *might* bring suit against it for its activity on the Ethereum Network for violating securities laws." [1-ER-6–7] The District Court reduced Hodl Law's multiple illustrations of the SEC targeting various individuals and companies with ad hoc enforcement lawsuits to just one example in support of its decision: The "*Wahi* [case] indicates nothing more than what Plaintiff asserts, that the SEC is filing lawsuits against individuals trading in crypto under the Securities Act." [1-ER-7] The District Court erred for two reasons. First, there is no way to know if the SEC has investigated or is investigating

Hodl Law because such evidence is unknowable due to the SEC's fiercely guarded deliberative process privilege. *See, e.g.*, *SEC v. Ripple Labs, Inc.*, 2023 WL 3477552, at *3 (S.D.N.Y. May 16, 2023) (describing lengthy fight by SEC to keep the Speech documents hidden from public disclosure under deliberative process privilege).

Second, the initiation of a prosecution by a federal agency is not determinative under a standing analysis. "The Supreme Court and this court have often emphasized that, when plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (citation omitted) (reversing court's granting of motion to dismiss, holding plaintiff had standing to seek declaratory relief against state agency). The District Court recognized that "[b]ecause the SEC is challenging the factual basis of Plaintiff's standing, the Court may review evidence beyond the complaint." [1-ER-4–5] It did not, however, seemingly recognize (or at least appreciate) the first-of-its-kind factual circumstances regarding the undisputable lack of regulatory clarity posed by digital assets. "It is well settled that evidence of past instances of enforcement is important in a standing inquiry." *LSO, Ltd.*, 205 F.3

at 1155. The District Court centered on only one of the enforcement actions raised by Hodl Law but failed to appreciate the hundreds of enforcement actions taken by the SEC. [1-ER-7]

Hodl Law emphasizes that this Court should appreciate that the public investor was only alerted to the SEC's position that the following DCUs were considering "crypto asset securities"[3] by the agency on the day the SEC filed the lawsuit alleging they were such:

- AMP, RLY, DDX, XYO, RGT, POWR, DFX, KROM [2-ER-19, 83]
- ADA, AXS, ALGO, ATOM, CHZ, COTI, DASH, FIL, FLOW, ICP, MANA, MATIC, NEAR, OMG, SAND and SOL. *See SEC v. Payward, Inc., et al.*, Case No. 3:23-cv-06003, ECF No. 1, Complaint ¶ 58 (N.D. Cal. Nov. 20, 2023) (*citing SEC v. Bittrex*, No. 2:23-cv-580 (W.D. Wash April 17, 2023), *SEC v. Binance Holdings Ltd.*, Civ. No. 23–1599 (D.D.C. June 5, 2023) *and SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y. June 6, 2023)

The SEC impliedly concedes that Hodl Law is under "substantial risk" and "realistic danger" of injury when it admits such enforcement actions are concreate examples of the policy of regulation-by-lawsuit. [2-ER-51] In another case, the SEC indicated to the district court it has outright authority over the Ethereum Network because the network may have operating nodes in the U.S. [2-ER-27, 83]

---

[3]   The term "crypto asset security" exists nowhere in federal statute or regulation and is a term invented by the SEC solely for its enforcement actions.

Importantly, where cases brought by the SEC are litigated to conclusion, Appellant's counsel is unaware of a district court that has held the DCU itself—the intrinsic computer code, not how it may be *initially* packaged and sold—is a security under federal law. *See, e.g.*, *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900 (S.D.N.Y. July 13, 2023) (denying majority of SEC's summary judgment motion while granting majority of defendant company's motion, holding third-largest DCU by market capitalization is not inherently a security: "XRP, as a digital token, is not in and of itself a 'contract, transaction or scheme' that embodies *Howey* requirements of an investment contract"). *See also* *SEC v. Telegram Grp., Inc.*, 448 F. Supp.3d 352, 379 (S.D.N.Y. 2020) ("While helpful as a shorthand reference, the security in this case **is not simply the Gram [DCU]**, which is little more than alphanumeric cryptographic sequence") (emphasis added).

When a plaintiff has not been prosecuted or fined and a defendant agency claims the action is unripe, the Court considers "(1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citation omitted). *See also* *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1124 (9th Cir. 2009) (ripeness met for declaratory judgment action where state department

of health had yet to enforce rules against plaintiff but threat of job loss constituted "sufficient immediacy and reality"). Here, the very nature of how the SEC asserts its self-granted authority to regulate digital assets vis-à-vis filing enforcement lawsuits is per se proof of Hodl Law's articulation of concrete plan to violate the law in question. Because the only way any entity can know if a network and DCU are securities in the SEC's eyes cannot occur unless and until the SEC sues it, Hodl Law *is* violating the Securities Act merely by transacting on the Ethereum Network and using the Ether DCU (based the SEC's allegations in *all* its previous regulation-by-lawsuit cases). The Chair of the SEC has been undeniably clear that everything other than the Bitcoin DCU is a security and "the runway is getting short" for market participants to "register" with the SEC. [2-ER-78, 81]

To punctuate the SEC's approach, on November 20, 2023, the SEC filed another major regulation-by-lawsuit enforcement action against one of the largest DCU exchanges in the U.S. *See SEC v. Payward, Inc.*, Case No. 3:23-cv-6003, ECF No. 1 (N.D. Cal. Nov. 20, 2023). The SEC alleged sixteen DCUs on the exchange were securities under the Securities Act. *Id.* at ¶ 58. The SEC's authority for alleging these DCUs to be securities, it told the district court, is because it alleged they were securities in *other enforcement cases* it brought in other jurisdictions. *Id.* The SEC's circular logic, and complete disregard for rule promulgation

22

and fair notice, led U.S. Senator Lummis (who filed an amicus brief against the SEC in the *Coinbase* enforcement action) to issue a response to this lawsuit that:

> The SEC cannot continue ruling by enforcement. Crypto asset companies have repeatedly tried to get guidance from the SEC only to be hit with enforcement actions, causing unnecessary harm to consumers. It is time for Congress to pass a regulatory framework to provide clear rules to the SEC on what is a security and what is a commodity.[4]

After nearly nine years of the Ethereum Network being operational and in use, and after five years of the SEC's public statements that the Ethereum Network and Ether DCU were *not* securities subjection to regulation [2-ER-25, 34–35], the SEC cannot provide a credible answer to the following: How can the SEC claim it has been unable to find the time to issue one rule or regulation about Ethereum when it has been filing hundreds of enforcement actions involving digital assets? Given these factual circumstances, the Court should "firmly predict" with great confidence that SEC will continue to deny Hodl Law the benefit of knowing whether its use of the Ethereum Network and Ether DCU violate the Securities Act. Hodl Law has no other alternatives to ensure its actions do not break the law outside of seeking declaratory relief. [2-ER-37, 38]

---

[4]   X.com, U.S. Senator Cynthia Lummis, *available at* https://twitter.com/SenLummis/status/1726768494069354545 (last accessed Nov. 21, 2023)

Hodl Law seeks relief on the same footing the SEC uses to promulgate rules on which DCUs it feels are securities—federal court. Yet, because of this regulation-by-lawsuit approach, Hodl Law finds itself caught in a netherworld of standing that represents an issue of first impression for the Circuit: A federal agency that claims jurisdiction over a trillion-dollar asset class while simultaneous acknowledging it has not (over the past decade or for the foreseeable future) engaged in any of its rule-making obligations to reveal how it will regulate the industry aside from lawsuits. The SEC's behavior is occurring against the backdrop of its claimed jurisdiction being publicly and bitterly contested by Congress, the courts and other federal agencies. As the history of past prosecution and enforcement actions by the SEC with respect to digital assets demonstrates that the only way a market participant can achieve regulatory clarity from the SEC is to be sued by it, every element towards standing and ripeness in *Wolfson* is demonstrably met. *See also, e.g.*, *Kiser*, 765 F.3d at 609 (allegations of future threat of enforcement by state dental board supported injury in fact element for Article III standing in request for declaratory relief)*;* *LSO, Ltd.*, 205 F.3d at 1156 (reversing district court, holding plaintiff had standing in declaratory action against state alcohol department due to "realistic threat" based on department's enforcement history and resultant suppression of its freedom of expression); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 470–71 (5th Cir. 2014)

(plaintiffs had standing for declaratory relief against federal department's enforcement of federal law despite not having been formally denied laws' benefits because any attempt to apply for relief "would have been futile"); *Fordyce v. City of Seattle*, 55 F.3d 436, 440 (9th Cir. 1995) (plaintiff had standing to challenge statute that had yet to be applied to him and "concrete controversy" existed because plaintiff was "uncertain and insecure" regarding his rights and statute casted a "brooding presence" that adversely affected his legitimate interests as a citizen).

### 2. The SEC has consistently failed to disavow application of the Securities Act to the Ethereum Network and Ether DCU.

"Courts have also considered the Government's failure to disavow application of the challenged provision as a factor in favor of a finding of standing." *LSO, Ltd.*, 205 F.3 at 1155. The SEC has failed to disavow application of the Securities Act to the Ethereum Network despite hundreds (if not thousands) of requests. [2-ER-36–37] Over five years ago, in 2018, the SEC underwent a substantial internal review of whether to publicly state its views on whether the Ethereum Network and Ether DCU would be considered securities under federal law. [2-ER-31–36, 269–271, 285, 316, 333] This review, authorized by the then-Chair himself, culminated in the Speech. Admittedly, SEC staff

and counsel—in communications staff never thought would become public and in which the SEC bitterly fought to withhold in litigation in the S.D.N.Y.—deliberately adopted a method of "the less detail the better" in its chosen route of communication to the American public. [3-ER-316] The then-Chair would go onto to provide public interviews extolling the Speech as official SEC guidance on the question of Ethereum. [2-ER-271] Hodl Law's suit for declaratory relief has, simply by its filing, caused the SEC to take a position via its motion to dismiss that, in fact, the Speech is no longer the official position of the agency on the question of Ethereum. [2-ER-52–53]

### C. First and Fifth Amendment Violations Also Provide Hodl Law With Standing.

"[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO, Ltd.*, 205 F.3 at 1155. *See also Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (citation omitted) (holding plaintiff possessed standing for declaratory relief where state regulatory body's behavior constituted credible enforcement threat). The District Court acknowledged Hodl Law argued both a First and Fifth Amendment violation of its constitutional rights in its standing claim but chose not to address those arguments for lack of explicit raising of them in the Complaint. [1-ER-9–10] One of Hodl Law's uses of the Ethereum

Network and Ether DCU is engaging in constitutionally protected commercial speech in a digital metaverse on an Ethereum Network-based application. [2-ER-21, 37] Unlike actual securities under the Securities Act, blockchain networks incorporate both monetary functions (storing and transferring value) *and* informational, expressive functions (communicating and displaying ideas, concepts and designs). These networks, by the nature of blockchain technology, require the use the network's cryptographic token/DCU to transact and use the network's benefits. [2-ER-22–24]

Additionally, historical evidence demonstrates that when the SEC decides to publicly state a DCU is a security in its opinion, that public statement occurs for the first time via a lawsuit. Unsurprisingly, such an "announcement" causes the DCU to substantially drop in value and remain suppressed during the pendency of the suit. [2-ER-80] Consequently, Hodl Law's imminent harm stems from the SEC's taking of that value based on its history of seeking injunctive and disgorgement relief based on transactions involving DCUs. *See, e.g.*, *Eastern Enters. v. Apfel*, 524 U.S. 498, 521 (1998) ("the Declaratory Judgment Act 'allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained'") *quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 (1978).

### D. Hodl Law's Complaint is not only constitutionally ripe for adjudication, but also prudentially ripe.

"Though a concrete case or controversy [may be] present, we also evaluate whether we should decline to exercise jurisdiction on the bases of two interrelated factors: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Stormans*, 586 F.3d at 1126 (citation omitted). Meeting only one factor, however, is sufficient for a finding of prudential ripeness: "Hardship serves as a counterbalance to any interest the judiciary has in delaying consideration of a case." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (citation omitted) (declining to evaluate hardship factor after finding fitness for review in light of history of past enforcement behavior of federal agency).

### 1. The fitness of the issue for review necessitates judicial decision.

"'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Stormans*, 586 F.3d at 1126 (finding plaintiffs' claims fit for decision because whether plaintiff's refusal to abide by rule regarding contraceptive dispensation was primarily legal and not hypothetical). *See also, e.g.*, *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018) ("We therefore focus on both the 'practical and legal effects of

28

the agency action,' and define the finality requirement 'in a pragmatic and flexible manner'") (citation omitted). The District Court acknowledged that "[w]hile it is true that the determination of finality does not rest on the issuance of a command by an agency, the Court must take into account of the practicalities of the agency action, determining whether the agency action is effective and final as to the aggrieved part." [1-ER-10] Despite this recognition, the District Court erred in finding that "the SEC's actions do not constitute a final agency action sufficient to establish that the claim is ripe." [1-ER-10] Although the District Court was provided the judicially-ordered Speech deliberations, it decided "they do not illustrate an evaluative process yielding a sufficient record 'to enable judicial review.'" [1-ER-12] The District Court made this determination despite those documents showcasing the deep analysis among every high-level department head at the SEC,[5] culminating in the decision to publicly announce that Ethereum and the Ether DCU were not securities (approved by the SEC's General Counsel and then-Chair). [2-ER-31–36, 269–271, 285, 316, 333] Instead, the District Court described the executive-level deliberations regarding the Speech as "illustrat[ing] the ongoing

---

[5]  These high-level employees represented the SEC's: (1) Division of Enforcement; (2) Division of Corporate Finance; (3) Division of Trading and Markets; (4) Office of Small Business Policy; (5) Senior Advisors to the Commissioners; (6) Office of the Strategic Hub for Innovation and Financial Technology (FinHub); (7) Disclosure Review and Accounting Office; and (8) the Office of General Counsel. [2-ER-85]

confusion surrounding the status of cryptocurrencies as securities and demonstrate[ing] the need for the SEC to issue definitive guidance rather than approaching the issue in piecemeal litigation." [1-ER-12]

*Oklevueha* is also instructive. There, a chapter of the Native American Church sought declaratory relief that the federal government's seizure of marijuana it would use in future religious ceremonies was unlawful and the Controlled Substances Act ("CSA") could not be enforced against it. *Oklevueha*, 676 F.3d at 834. In reversing the district's court holding that the case was not fit for review, this Court held that prior enforcement actions presented a concrete example of likely future injury; that ripeness was not lost just because plaintiffs did not seek an exemption under the CSA; and that the government's claims about the alleged difficulty of crafting injunctive relief was not a factor in evaluating fitness for review because the scope of any injunctive relief could be determined at a later phase of litigation. *Id.* at 838.

Similarly, Hodl Law has demonstrated that the SEC has engaged in over one hundred enforcement actions and has only increased the pace of lawsuits. Not only is an attempt at exemption from the Securities Act not required, Hodl Law has attempted to get clarity from the SEC only to be ignored. [2-ER-37] The SEC has *never* provided an exemption to *any* user of a digital asset network and DCU on the secondary market. For the entire decade-plus existence of the digital asset industry, the

30

SEC cannot even point to a single method available to Hodl Law to receive an answer to its questions regarding the agency's actual beliefs over its authority to regulate the Ethereum Network and Ether DCU.

Essentially, the Court must decide whether the SEC's clear decision to simply never engage in any formal policy decision-making on Ethereum may permanently immunize it from ever being subject to a party seeking declaratory relief. The Court should decide that waiting for formal rulemaking or "final agency action" from the SEC is a pointless endeavor. There is no mechanism *at all* for an entity to prospectively ascertain the SEC's subjective beliefs on a DCU before the agency files a lawsuit. *See Skyline Wesleyan Church v. California Dep't of Manage Care*, 968 F.3d 738, 753 (9th Cir. 2020) (reversing district court, finding fitness for review in part because state agency could not identify "any case in which a party that was already injured was required to navigate the type of ill-defined terrain [plaintiff] would have faced to ripen its claim in the way the [agency] argues").

### 2. Hodl Law faces significant hardship without a judicial decision.

"'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *Stormans*, F.3d at 1126 (citation omitted). In *Stormans*, the hardship factor was "certainly met,

because unless [plaintiffs] prevail in this litigation, they will suffer the very injury they assert—they will be required to dispense [contraceptives] over their religious and moral objections." *Id.* The Supreme Court has "permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("denying prompt judicial review would impose a substantial hardship on petitioners, forcing them to choose between refraining from core political speech . . . or engaging in that speech and risking costly Commission proceedings and criminal prosecution"). *See also Full Circle of Living & Dying v. Sanchez*, 2020 WL 771420, at *4 (E.D. Cal. Dec. 29, 2020) (finding hardship satisfied where "[Plaintiff] would be forced to choose between continuing established operations as it has conducted them for several years and risking fines or withholding services"); *Doe v. Aetna, Inc.*, 2016 WL 1028363, at *3 (S.D. Cal. Mar. 15, 2016) (hardship prong met where insurer's planned policy change would affect plaintiffs' health and privacy concerns regarding prescriptions).

Past enforcement actions show that enforcement actions by the SEC immediately act to dramatically reduce the value of the DCU targeted. [2-ER-80] The value of Hodl Law's Ether DCU and its ability to transact on the Ethereum Network would be substantially impaired, if not altogether wiped out, if the SEC subjectively decides to file an enforcement action. [2-ER-21, 38] Yet, aside from the purely financial

damage, Hodl Law faces reputational damage including the potential for its lawyers to be sanctioned by the State Bar. [2-ER-90] This additional damage stems from Hodl Law's use of the Ether DCU to purchase digital property to offer legal services in the metaverse, build its brand and strengthen its reputation as a digital asset-based firm. [2-ER-86, 89–90] The inherent smart contract functionality built into the Ethereum Network forms a basis for the transactional practice of law by the firm. [2-ER-90] On any given day that the whims of the SEC blow in the direction of filing an enforcement action alleging the Ethereum Network and Ether DCU to be securities, the lawyers at Hodl Law would be immediately at risk of significant state bar disciplinary action for violating federal law. [2-ER-90] Simply utilizing the Ether DCU for client payments, or acting as custodian for clients' digital asset property, would expose the firm's attorneys to career-ending sanctions. [2-ER-90] The SEC's statements and actions demonstrate Hodl Law has no reasonable assurance it will not be investigated or subject to future enforcement actions. Considering the economic, reputational and even career-ending damage possible, the Court should find the hardship factor "certainly met" here.

### E. APA Does Not Apply Because, Under the Major Questions Doctrine, the SEC has no jurisdiction over a software network.

The District Court erred in failing to consider Hodl Law's challenge to the SEC's jurisdiction under the Major Questions Doctrine although, to its credit, it did admit that internal SEC communications regarding the status of the Ethereum Network and Ether DCU "illustrate the ongoing confusion surrounding the status of cryptocurrencies as securities and demonstrate the need for the SEC to issue definitive guidance rather than approaching this issue in piecemeal litigation." [1-ER-12] The SEC readily concedes it has never engaged in any regulatory process on Ethereum under the guise of enforcing any Congressional mandate. [2-ER-55, 56] One U.S. Senator went to the extraordinary measure of filing an amicus brief in another SEC enforcement action to directly argue to the district court that the SEC has no mandate in its quest for federal regulatory market share in the digital asset industry. *SEC v. Coinbase, Inc.*, No. 23-cv-4738, ECF No. 53 (S.D.N.Y. Aug. 11, 2023) at 10 ("Both pillars of the major questions doctrine favor judicial caution here: (1) there is vast economic and political significance to the SEC's assertion of authority to define crypto assets as securities, and (2) Congress did not speak clearly to confer such power on the SEC"). The SEC has disregarded any pretense of engaging in a regulatory process with Ethereum—and digital assets

generally—in its regulation-by-lawsuit behavior. It now deigns to accept that a person or entity such as Hodl Law has challenged the SEC by using its own tactics against it.

Simply put, the SEC has no jurisdiction over Hodl Law's use of the Ethereum Network and that is precisely the point that underlies why judicial review is necessary. The Supreme Court held a federal agency's claim of an "[e]xtraordinary grant[] of regulatory authority" requires "clear congressional authorization." *West Virginia v. EPA*, 142 S.Ct. 2587, 2609 (2022). In *West Virginia*, the Supreme Court held the petitioner States had standing so long as the threat of injury from the EPA's claimed authority remained a possibility. *Id.* at 2606–07 ("there can be 'little question' that the [agency's] rule does injure the States, since they are 'the object of' its requirements that they more stringently regulate power plant emissions within their borders") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–562 (1992). As has been demonstrated by its prior enforcement actions and current behavior, the SEC claims jurisdiction over the trillion-dollar-plus digital asset industry—of which the Ethereum Network is measured in the "hundreds of billions" [2-ER-20]—yet cannot point to single federal statue authorizing such a claim beyond the ninety-year-old Securities Act. "[A]n agency must point to clear congressional authorization when it seeks to regulate a significant portion of the American economy." *West*

*Virginia v. EPA,* at 2621 (Gorsuch, J., concurring) (collecting cases). *See also Biden v. Nebraska*, 143 S.Ct. 2355, 2372–73 (2023) (noting a $50 billion economic impact implicated doctrine in previous cases).

The major questions doctrine is to be most strongly applied where an agency decides to claim authority it earlier proclaimed it lacks. *See Biden v. Nebraska*, 143 S.Ct. at 2372–73 ("Under the Government's reading of the HEROES Act, the Secretary [of Education] would enjoy virtually unlimited power to rewrite the Education Act" and such self-aggrandizing "is staggering by any measure") (citing *West Virginia v. EPA,* 142 S.Ct. at 2608); *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 159–60 (2000) ("we are obligated to defer not to the agency's expansive construction of the statute, but to Congress' consistent judgment to deny the FDA this power" in case where "the FDA has now asserted jurisdiction to regulate an industry constituting a significant portion of the American economy").

In its motion to dismiss, the SEC argued it has "not issued final decisions about the Ethereum network and Ether" despite the passage of nearly ten years without *any* proposed rules or policy guidance. [2-ER-54–55] This is directly opposite of the agency's 2018 Speech stating the Ethereum Network and Ether DCU are *not* securities. [2-ER-29–34, 35] When a federal magistrate judge ordered the SEC to hand over internal emails about its Ethereum machinations, she chastised the SEC for its "hypocrisy…suggest[ing] that the SEC is

adopting its litigation positions to further its desired goal, and not out of faithful allegiance to the law." *SEC v. Ripple Labs, Inc.*, 2022 WL 2705396, at *3. In opposing Hodl Law's attempt at seeking bare minimum regulatory clarity, the SEC contradicts its years-long position it lacks the very authority it now claims. In May 2021, the SEC Chair conceded the SEC lacked broad regulatory authority over digital assets, testifying before Congress that "only Congress" could resolve the regulatory gap concerning the industry.[6] On January 20, 2023, one Commissioner proclaimed "if we seriously grappled with the legal analysis and our statutory authority, . . . we would have to admit that we likely need . . . more clearly delineated, statutory authority to regulate certain crypto tokens. . . ."[7] At numerous congressional hearings, when asked directly whether the SEC has decided—after nearly a decade of the Ethereum Network's existence—if the Ether DCU is a security, the Chair refuses to even tell Congress.[8] The SEC

---

[6] *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III*, Hr'g Before the U.S. H. Fin. Servs. Comm., 117th Cong. 12 (May 6, 2021) (statement of SEC Chair Gary Gensler), https://tinyurl.com/mtrnkbn2.

[7] Hester M. Peirce, Comm'r, SEC, *Outdated:Remarks Before the Digital Assets at Duke Conference* (Jan. 20, 2023), https://www.sec.gov/news/speech/peirce-remarks-duke-conference-012023.

[8] U.S. House Financial Services Committee, *Oversight of the Securities and Exchange Commission* (April 18, 2023) (beginning at 43:14 through 47:00), *available at* https://www.youtube.com/watch?v=DmipafFCli0&t=1s

does not have any jurisdiction over commodities and CFTC has stated on numerous occasions that the Ethereum Network and Ether DCU are commodities, not securities. [2-ER-91, 114]

The SEC claims authority despite no Congressional mandate while simultaneously *refusing* to tell anyone—be it Congress or the public at large—anything about any limits or contours of its purported authority. Its refusal to engage in any rulemaking resulted in the D.C. Circuit Court of Appeals holding the agency's denial of a digital asset spot ETF "was arbitrary and capricious because the Commission failed to explain its different treatment of similar [futures] products." *Grayscale Investments, LLC v. Securities and Exchange Commission*, 82 F.4th 1239, 1242 (D.C. Cir. 2023); *id.* at 1252 ("In the absence of a coherent explanation, this unlike regulatory treatment of like products is unlawful"). SEC rulemaking would at least provide Hodl Law and the public at large some certainty in that it be provided in advance and presumably equally applied to all. Instead, the SEC *only* pursues regulation-by-litigation.

Consequently, given the statements of *both* branches of Congress *as well as* other federal agencies like the CFTC to the contrary, it is clear the SEC has asserted "highly consequential power beyond what Congress could reasonably be understood to have granted." *West Virginia*, 142 S. Ct. at 2609.

38

### F.   The District Court Erred In Denying Leave To Amend For Constitutional Claims.

Dismissal of a complaint without leave to amend is improper unless it is clear, upon de novo review that the complaint could not be saved by any amendment. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 894 (2020); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). "We review for abuse of discretion the district court's denial of leave to amend." *AE ex rel. Hernandez*, 666 F.3d 631, 636 (9th Cir. 2012) (citation omitted). "A district court also abuses its discretion when it commits an error of law." *Id.* (citation omitted).

The District Court acknowledged Hodl Law's constitutional arguments that supported a finding in favor of standing, but explicitly declined to address them because those arguments were not raised in the Complaint. [1-ER-9–10] The District Court therefore not only bypassed two critical constitutional questions under the First and Fifth Amendments but also erred in failing to liberally grant Hodl Law leave to amend the Complaint to specifically plead these constitutional violations. *See* Fed. R. Civ. P. 15(a)(2). ("The court should freely give leave when justice so requires"); *see also, e.g.*, *AE ex rel. Hernandez*, 666 F.3d at 637 (holding district court abused in discretion in denying plaintiff opportunity to allege additional facts supporting claim that county social workers' alleged constitutional violations were carried out

pursuant to county policy). As discussed in is Opposition [2-ER-86–87] and here, the constitutional arguments raised are inherently intertwined with Hodl Law's standing to sue the SEC and the District Court should have addressed them. At minimum, the Court should allow Hodl Law to amend its Complaint to more explicitly assert its allegations that declaratory relief is required by Hodl Law's First and Fifth Amendment rights.

## VI. CONCLUSION

In its de novo review of Hodl Law's position that it has standing to seek declaratory relief, the Court should find the District Court erred in not finding a case or controversy that is sufficiently ripe for judicial review. To the contrary, because Hodl Law has requested an answer from the SEC on whether its use of the Ethereum Network and Ether DCU violate the Securities Act and has been ignored, coupled with multi-year history of no formal rule-making aside from its 2018 Speech, this Court can "firmly predict" that the SEC will never provide an answer to Hodl Law, effectively denying it of relief in either direction. Consequently, the Court should reverse the District Court and hold that Hodl Law has the standing to pursue declaratory relief.

At minimum, the Court should find the District Court erred in refusing to grant Hodl Law leave to amend its Complaint to more concretely plead its First and Fifth Amendment violations, which the District Court recognized but declined to address.

Hodl Law Cali, APC

Respectfully submitted,

Dated: November 27, 2023          By: /s/ Fred Rispoli
                                      _____

                                      Attorney for
                                      Plaintiff - Appellant
                                      HODL LAW, PLLC

41

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **8,958 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: November 27, 2023          By: /s/ Fred Rispoli

## Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the Appellate CM/ECF system on **.** I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Hodl Law Cali, APC

Respectfully submitted,

Dated: November 27, 2023     By: /s/ Fred Rispoli

Attorney for
Plaintiff - Appellant
HODL LAW, PLLC