No. 23-55810

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

HODL LAW, PLLC,

PLAINTIFF-APPELLANT,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

DEFENDANT-APPELLEE.

On Appeal from the United States District Court
for the Southern District of California

BRIEF OF THE U.S. SECURITIES AND EXCHANGE COMMISSION, APPELLEE

MEGAN BARBERO
General Counsel

ELIZABETH MCFADDEN
Deputy General Counsel

TRACEY SASSER
Associate General Counsel

MELINDA HARDY
Assistant General Counsel

ALEXANDRA VERDI
Attorney
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5057 (Verdi)
verdim@sec.gov

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

Statement Regarding Oral Argument ..................................................................xi

Counterstatement of Jurisdiction .......................................................................1

Counterstatement of the Issues .........................................................................2

Counterstatement of the Case ...........................................................................2

      A.    Nature of the Case....................................................................2

      B.    Statement of the Facts...............................................................4

      C.    Proceedings Below....................................................................5

             1.    Hodl Law filed a complaint against the SEC. .................5

             2.    Hodl Law filed multiple notices of inapposite supplemental authority with the district court. ................6

             3.    The district court dismissed Hodl Law's action..............6

Standard of Review...........................................................................................9

Summary of Argument ......................................................................................9

Argument...........................................................................................................11

      I.    The district court properly dismissed Hodl Law's Declaratory Judgment Act claim for lack of subject matter jurisdiction. ....................................................11

             A.    Hodl Law fails to plead standing....................................13

             B.    Hodl Law's claim is not ripe. ........................................25

                  1.    Hodl Law's claim is not constitutionally ripe.........................................................................25

        2.     Hodl Law's claim is not prudentially ripe.............................................................26

    C.    Hodl Law fails to identify any authority providing it with a claim against the SEC, and the APA does not bridge this gap. ..................................33

  II.    The district court correctly denied Hodl Law's request for leave to file an amended complaint.....................................38

Conclusion ............................................................................40

Certificate of Compliance with Rule 32(a)...............................42

Certificate of Service ..............................................................43

Designation of Relevant Lower Court Documents...................44

TABLE OF AUTHORITIES

## CASES

*AE v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012) ...........................................40

*Ali v. Rogers*, 780 F.3d 1229 (9th Cir. 2015).............................................................9

*Amburgey v. CaremarkPCS Health, L.L.C.*, No. SACV 17-00183-CJC(KESx), 2017 WL 7806634 (C.D. Cal. Sept. 21, 2017) ....................................................15

*Am. Fin. Benefits Ctr. v. FTC*, No. 17-04817, 2018 WL 3203391 (N.D. Cal. May 29, 2018) ............................................................................................... 11, 34, 35

*Amtax Holdings 260, LLC v. Washington State Hous. Fin. Comm'n*, No. 21-35789, 2022 WL 2953701 (9th Cir. July 26, 2022)..........................................................32

*Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770 (9th Cir. 2000).. 10, 26, 27

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) ...................................................... 37, 38

*Blumenkron v. Eberwein*, 715 F. App'x 633 (9th Cir. 2017) ........................... 27, 31

*Bush v. U.S. HHS*, No. 21-cv-06055-JCS, 2021 U.S. Dist. LEXIS 168285 (N.D. Cal. Sept. 4, 2021)...............................................................................................36

*Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538 (9th Cir. 2011) ..............................................................................................................13

*Chang v. United States*, 327 F.3d 911 (9th Cir. 2003) ...........................................17

*Coakley v. Sunn*, 895 F.2d 604 (9th Cir. 1990) ............................................... 13, 14

*Doe v. Aetna, Inc.*, No. 14cv2986-LAB (DHB), 2016 WL 1028363 (S.D. Cal. Mar. 15, 2016) ...................................................................................................33

*E. Enters. v. Apfel*, 524 U.S. 498 (1998)..............................................................24

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)......................38

*Fiedler v. Clark*, 714 F.2d 77 (9th Cir. 1983)......................................................13

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) .......................................22

*Full Circle of Living & Dying v. Sanchez*, No. 2:20-CV-01306 KJM KJN, 2020 WL 7714200 (E.D. Cal. Dec. 28, 2020) .............................................................32

*Full Value Advisors, LLC v. SEC*, 633 F.3d 1101 (D.C. Cir. 2011).......................23

*General Finance Corp. v. FTC*, 700 F.2d 366 (7th Cir. 1983)........................ 33, 34

*Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018) ..............................34

*Hillblom v. United States*, 896 F.2d 426 (9th Cir. 1990).......................................25

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*, 306 F.3d 842 (9th Cir. 2002)...........................................................................................17

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014).......................................................22

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).........................11

*Longstreet Delicatessen, Fine Wines & Specialty Coffees, L.L.C. v. Jolly*, 1:06-CV-00986-OWW DLB, 2007 WL 2815022 (E.D. Cal. Sept. 25, 2007)....................15

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) .......................................... 18, 22

iv

*McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465 (5th Cir. 2014) ...........22

*Minn. Auto Dealers Ass'n v. Minnesota*, 520 F. Supp. 3d 1126 (D. Minn. 2021) ..27

*Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184 (9th Cir. 2014)....... passim

*Mont. Shooting Sports Ass'n v. Holder*, CV-09-147-DWM-JCL, 2010 WL 3926029 (D. Mont. Aug. 31, 2010) ....................................................................15

*Nat. Res. Def. Council v. Abraham*, 388 F.3d 701 (9th Cir. 2004) ........................30

*New Jersey v. U.S. HHS*, No. 07-4698 (JAP), 2008 WL 4936933 (D.N.J. Nov. 17, 2008) ....................................................................................................................28

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004) ...................................36

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) ....................................................................................................................29

*Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) ...................................39

*Physicians for Integrity in Med. Rsch., Inc. v. Hamburg, Comm'r, FDA*, No. LA CV14-00755 JAK (JCx), 2014 WL 12591629 (C.D. Cal. Oct. 23, 2014) .........31

*PT Pukuafu Indah v. U.S. SEC*, No. 09-10943, 2009 WL 2923157 (E.D. Mich. Sept. 10, 2009) ...............................................................................................24

*Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990)..............................................38

*Schmier v. U.S. Court of Appeals*, 279 F.3d 817 (9th Cir. 2002) ............................9

*SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020) ........................20

*SEC v. Wall Street Publishing Inst., Inc.*, 851 F.2d 365 (D.C. Cir. 1988) ..............23

*Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632 (9th Cir. 2014) ..................................................................................................12

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020)............................................................................................29

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ................................ 22, 32

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................................32

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) ....................................................................................................39

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000)................................................................................... 10, 25, 26, 31

*Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) ........................................9, 23

*United States v. Schlenker*, 24 F.4th 1301 (9th Cir. 2022) .....................................12

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022).........................................................37

*Wilson v. Fid. Mgmt. Trust Co.*, 755 F. App'x 697 (9th Cir. 2019).........................9

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) .............................................21

**STATUTES**

15 U.S.C. § 77d.........................................................................................................21

15 U.S.C. § 78d ............................................................................28

15 U.S.C. § 78d-1 .........................................................................28

28 U.S.C. § 1331 ...........................................................................12

28 U.S.C. § 2201(a) .......................................................................12

5 U.S.C. § 704 ...............................................................................34

5 U.S.C. § 706(1) ...........................................................................36

**FEDERAL REGULATIONS**

17 C.F.R. § 200.30-1 ......................................................................28

17 C.F.R. § 200.40 *et seq* ..............................................................28

17 C.F.R. § 200.400 *et seq* ...........................................................28

17 C.F.R. § 200.735-4 .....................................................................29

**SEC REPORTS, STATEMENTS, PRESS RELEASES, AND WEBSITE**

*About the SEC*, U.S. SEC. & EXCH. COMM'N (Nov. 22, 2016),

    https://www.sec.gov/about ......................................................4

*Crypto Assets and Cyber Enforcement Actions*, U.S. SEC. & EXCH. COMM'N (Dec.

    11, 2023), https://www.sec.gov/spotlight/cybersecurity-enforcement-actions. ....4

*Custody of Digital Asset Securities by Special Purpose Broker-Dealers*, Release

    No. 34-90788, 2020 WL 8028080 (Dec. 23, 2020), https://www.sec.gov/rules/

    policy/2020/34-90788.pdf ..................................................3, 4

*Investor Bulletin: Initial Coin Offerings*, U.S. Sᴇᴄ. & Exᴄʜ. Cᴏᴍᴍ'ɴ (July 25, 2017), https://www.investor.gov/introduction-investing/general-resources/news-alerts/alerts-bulletins/investor-bulletins-16. ........................................................3

Letter from Vanessa A. Countryman, Secretary of U.S. Sec. & Exch. Comm'n, to Paul Grewal, Chief Legal Officer Coinbase Global, Inc. (Dec. 15, 2023) (https://www.sec.gov/files/rules/petitions/2023/4-789-letter-secretary-grewal-121523.pdf). ........................................................................................................4

*Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Release No. 81207, 2017 WL 7184670 (July 25, 2017), https://www.sec.gov/files/litigation/investreport/34-81207.pdf...........................4

*SEC Charges Coinbase for Operating as an Unregistered Securities Exchange, Broker, and Clearing Agency*, U.S. Sᴇᴄ. & Exᴄʜ. Cᴏᴍᴍ'ɴ (June 6, 2023), https://www.sec.gov/news/press-release/2023-102 ...........................................20

*SEC Charges Crypto Asset Trading Platform Bittrex and its Former CEO for Operating an Unregistered Exchange, Broker, and Clearing Agency*, U.S. Sᴇᴄ. & Exᴄʜ. Cᴏᴍᴍ'ɴ (Apr. 17, 2023), https://www.sec.gov/news/press-release/2023-78 ...................................................................................20

*SEC Charges Former Coinbase Manager, Two Others in Crypto Asset Insider Trading Action*, U.S. SEC. & EXCH. COMM'N (July 21, 2022), https://www.sec.gov/news/press-release/2022-127 ............................................18

*SEC Charges Kraken for Operating as an Unregistered Securities Exchange, Broker, Dealer, and Clearing Agency*, U.S. SEC. & EXCH. COMM'N (Nov. 21, 2023), https://www.sec.gov/litigation/litreleases/lr-25896 ................................19

*SEC Charges New Hampshire Issuer of Digital Asset Securities with Registration Violations*, U.S. SEC. & EXCH. COMM'N (March 29, 2021), https://www.sec.gov/litigation/litreleases/lr-25060 ............................................19

*SEC Charges Ripple and Two Executives with Conducting $1.3 Billion Unregistered Securities Offering*, U.S. SEC. & EXCH. COMM'N (Dec. 22, 2020), https://www.sec.gov/news/press-release/2020-338 ............................................19

*SEC Files 13 Charges Against Binance Entities and Founder Changpeng Zhao*, U.S. SEC. & EXCH. COMM'N (June 5, 2023), https://www.sec.gov/news/press-release/2023-101 ............................................................................19

*Sparkster to Pay $35 Million to Harmed Investor Fund for Unregistered Crypto Asset Offering*, U.S. SEC. & EXCH. COMM'N (Sept. 19, 2022), https://www.sec.gov/news/press-release/2022-167 ............................................20

*Strategic Hub for Innovation and Financial Technology (FinHub)*, U.S. Sᴇᴄ. &

Eхᴄʜ. Cᴏᴍᴍ'ɴ (Nov. 7, 2023), https://www.sec.gov/finhub ..............................4

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is unnecessary in this appeal because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(C).

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

HODL LAW, PLLC,

PLAINTIFF-APPELLANT,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

DEFENDANT-APPELLEE.

_____

On Appeal from the United States District Court
for the Southern District of California

_____

**BRIEF OF THE U.S. SECURITIES AND EXCHANGE COMMISSION, APPELLEE**

_____

**COUNTERSTATEMENT OF JURISDICTION**

In this civil action brought by Appellant Hodl Law, PLLC ("Hodl Law"), the district court lacked jurisdiction over Hodl Law's claim against the Appellee U.S. Securities and Exchange Commission ("SEC") because Hodl Law failed to identify a case or controversy between it and the SEC sufficient to demonstrate standing, Hodl Law's claim is not ripe, and Hodl Law's complaint does not satisfy the Administrative Procedure Act ("APA"). On July 28, 2023, the district court entered an order dismissing Hodl Law's action for lack of subject matter

jurisdiction.  District Court Order, Dkt. 6-2, 1 ER 16.  On September 25, 2023, Hodl Law timely filed a notice of appeal of that judgment under Federal Rule of Appellate Procedure 4.  Notice of Appeal, Dkt. 6-4, 3 ER 342-43.  This Court has jurisdiction under 28 U.S.C. § 1291 to hear this appeal of a final judgment entered on July 28, 2023.

## COUNTERSTATEMENT OF THE ISSUES

(1)    Whether the district court correctly dismissed the complaint for lack of subject matter jurisdiction where Hodl Law seeks a declaration about whether a particular asset is a security but has not shown imminent injury that could confer standing, fitness for judicial review or hardship to show its claim is ripe, or final agency action to support a claim under the Administrative Procedure Act.

(2)    Whether the district court correctly denied Hodl Law's request for leave to amend its complaint to add claims under the First or Fifth Amendments where Hodl Law has not provided any reason to believe that those claims would remedy the lack of standing and ripeness.

## COUNTERSTATEMENT OF THE CASE

### A.    NATURE OF THE CASE

To carry out its mission, the SEC oversees and responds to emerging technologies in financial, regulatory, and supervisory systems, including, among

other areas, crypto assets (also referred to as digital assets).[1]  Hodl Law describes

itself as "a law firm that provides legal services regarding digital assets" and also

"transacts on the Ethereum Network and uses" Ether (which Hodl Law calls "the

Ether digital current unit" or "Ether DCU").  Appellant's Br. at 3.

In this action, Hodl Law seeks a declaratory ruling from the Court that its

transactions on the Ethereum Network and use of Ether do not implicate the

Securities Act of 1933 and are lawful.  Complaint, Dkt. 6-3, 2 ER 37-38.

Finding that it did not have subject matter jurisdiction over Hodl Law's

claim, the district court dismissed this action under Federal Rule of Civil Procedure

12(b)(1) and denied Hodl Law's request for leave to file an amended complaint.

Hodl Law now appeals the district court's decision.

---

[1] A crypto or digital asset "refers to an asset that is issued and/or transferred using distributed ledger or blockchain technology." *Custody of Digital Asset Securities by Special Purpose Broker-Dealers*, Release No. 34-90788, 2020 WL 8028080, at *1 n.1 (Dec. 23, 2020), https://www.sec.gov/rules/policy/2020/34-90788.pdf. Crypto or digital assets include, but are not limited to, so-called "virtual currencies," "coins," and "tokens." *Id.*  The Ethereum Network is a blockchain used to create and track transactions in Ether, among other things. *See Investor Bulletin: Initial Coin Offerings*, U.S. SEC. & EXCH. COMM'N (July 25, 2017), https://www.investor.gov/introduction-investing/general-resources/news-alerts/alerts-bulletins/investor-bulletins-16.

**B.** **STATEMENT OF THE FACTS**

The SEC's mission is to "protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation." *About the SEC*, U.S. SEC. & EXCH. COMM'N (Nov. 22, 2016), https://www.sec.gov/about. This mission encompasses a wide range of issues related to crypto assets, and the SEC and its staff have taken a variety of steps to address those issues. *See, e.g.*, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Release No. 81207, 2017 WL 7184670 (July 25, 2017), https://www.sec.gov/files/litigation/investreport/34-81207.pdf; *Strategic Hub for Innovation and Financial Technology (FinHub)*, U.S. SEC. & EXCH. COMM'N (Nov. 7, 2023), https://www.sec.gov/finhub (collecting materials concerning the SEC's oversight and response regarding emerging technologies, including digital/crypto assets); Letter from Vanessa A. Countryman, Secretary of U.S. Sec. & Exch. Comm'n, to Paul Grewal, Chief Legal Officer Coinbase Global, Inc., at n.3 (Dec. 15, 2023) (https://www.sec.gov/files/rules/petitions/2023/4-789-letter-secretary-grewal-121523.pdf) (detailing "undertakings directly or indirectly relating to crypto asset securities that the Commission is currently pursuing"); *Crypto Assets and Cyber Enforcement Actions*, U.S. SEC. & EXCH. COMM'N (Dec. 11, 2023), https://www.sec.gov/spotlight/cybersecurity-enforcement-actions; *Custody of Digital Asset Securities by Special Purpose Broker-Dealers*, *supra*.

Appellant Hodl Law describes itself as "a law firm that focuses on legal and regulatory issues regarding digital assets." Complaint, Dkt. 6-3, 2 ER 18 at ¶1. Like "literally millions of other users worldwide," Hodl Law "transacts on the Ethereum Network and utilizes the Ether DCU for a variety of use cases." Complaint, Dkt. 6-3, 2 ER 20, 21 at ¶¶6, 18.

## C.   PROCEEDINGS BELOW

### 1.   Hodl Law filed a complaint against the SEC.

On November 21, 2022, Hodl Law filed a complaint against the SEC "seek[ing] a declaratory ruling from the [District] Court that engaging in transactional activities on the Ethereum Network using the Ether DCU does not implicate the Securities Act of 1933" and "Plaintiff's use of the Ethereum Network and Ether DCUs are lawful." Complaint, Dkt. 6-3, 2 ER 20, 37 at ¶¶8, 107. That complaint does not contain any constitutional claims. *See generally* Complaint, Dkt. 6-3, 2 ER 18-39.

On February 6, 2023, the SEC filed a motion to dismiss Hodl Law's request for a declaratory judgment pursuant to Federal Rule of Civil Procedure 12(b)(1). Mot. to Dismiss, Dkt. 6-3, 2 ER 40-67. The parties completed briefing of that motion on March 6, 2023. *See* SEC's Reply on Mot. to Dismiss, Dkt. 6-3, 2 ER 100-12.

**2. Hodl Law filed multiple notices of inapposite supplemental authority with the district court.**

On March 22, 2023, and June 23, 2023, Hodl Law submitted to the district court two notices of supplemental authority, with accompanying exhibits, in support of its opposition to the SEC's motion to dismiss. *See* Notice of Supplemental Authority, Dkt. 6-3, 2 ER 113-262; Second Notice of Supplemental Authority, Dkt. 6-3 and 6-4, 2 ER 268-3 ER 336. In its second notice, Hodl Law requested that the district court grant it "leave to file a supplemental memorandum in support of its opposition to the SEC's motion to dismiss." Second Notice of Supplemental Authority, Dkt. 6-3, 2 ER 271.

On March 30, 2023, and July 6, 2023, the SEC filed responses to Hodl Law's notices. *See* SEC's Response to Pl.'s Notice of Supplemental Authority, Dkt. 6-3, 2 ER 263-67; SEC's Response to Pl.'s Second Notice of Supplemental Authority, Dkt. 6-4, 3 ER 337-41. In its responses, the SEC stated that Hodl Law's notices neither provided relevant supplemental authority nor addressed the issue before the Court in this case. *See id.*

**3. The district court dismissed Hodl Law's action.**

On July 28, 2023, the district court granted the SEC's motion to dismiss Hodl Law's complaint and dismissed the action. District Court Order, Dkt. 6-2, 1 ER 2-16.

First, the district court concluded that Hodl Law "fail[ed] to identify a case or controversy between it and the SEC sufficient to demonstrate standing." 1 ER 6. The district court noted that Hodl Law "does not claim that the SEC has investigated [it], or prosecuted it" and "[t]he possibility that the SEC may file suit against [Hodl Law] is not definite and concrete, nor does it touch 'the legal relations of parties having adverse legal interests.'" 1 ER 6-7. The district court also found that Hodl Law "does not identify any authority compelling [the SEC] to engage in specific rulemaking, pursue specific regulatory approaches, or respond to private parties' requests for guidance." 1 ER 7.

Second, the district court determined that Hodl Law's claim is neither constitutionally nor prudentially ripe. 1 ER 7-13. The district court concluded that Hodl Law's claim was not constitutionally ripe because Hodl Law has not alleged "a substantial controversy" between it and the SEC, namely that "the SEC has investigated Hodl Law or brought suit against them for their conduct with regard to the Ethereum Network and the Ether DCU's." 1 ER 8.

With respect to prudential ripeness, the district court found that "[w]hether the Ethereum Network and Ether DCU's are securities is a purely legal question not fit for review 'until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by concrete action applying the regulation to the claimant's situation in a fashion that harms or

threatens to harm him.'" 1 ER 10. The district court also found that "the SEC's actions do not constitute a final agency action sufficient to establish that the claim is ripe." *Id.* With respect to Hodl Law's supplemental notices, the district court deemed them and their exhibits "not binding authority" and not supportive of Hodl Law's "conclusion that the SEC has formally adopted the position that the Ether Network and Ether DCU's are not securities." 1 ER 11-12. The district court further found that Hodl Law's alleged "hypothetical harm . . . does not constitute an immediate and direct hardship because it is not concrete" and that the firm prediction rule does not apply in these circumstances. 1 ER 13-14.

Third, the district court concluded that Hodl Law cannot bring its claim pursuant to the APA because "the SEC's actions do not constitute 'final agency action.'" 1 ER 14-15. The district court also observed that Hodl Law "has not identified any statute that governs review of the SEC's action, or inaction, regarding the Ethereum Network or Ether DCU's." 1 ER 15.

Finally, the district court granted the SEC's motion to dismiss without leave to amend "[i]n light of the speculative nature of [Hodl Law's] claims." *Id.* The district court did not address Hodl Law's First and Fifth Amendment arguments because Hodl Law "did not raise these arguments in the Complaint." 1 ER 9-10 n.1.

8

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of an action for lack of subject matter jurisdiction (*Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015)), including questions of standing (*Schmier v. U.S. Court of Appeals*, 279 F.3d 817, 820 (9th Cir. 2002)) and questions of ripeness (*Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)). This Court also reviews *de novo* a district court's denial of leave to amend for futility. *Wilson v. Fid. Mgmt. Trust Co.*, 755 F. App'x 697, 698 (9th Cir. 2019).

## SUMMARY OF ARGUMENT

The district court correctly dismissed Hodl Law's action under the Declaratory Judgment Act because Hodl Law cannot meet its burden of proving that the district court has subject matter jurisdiction over its claim for three reasons, each of which provides a basis by itself to find no jurisdiction. Specifically, Hodl Law has not established that it has standing to bring its claim, that its claim is ripe, or that it is challenging any final agency action.

Hodl Law does not have standing because it has not alleged that any injury has occurred or is imminent. *See Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (where an "alleged injury has not yet occurred," courts look to whether an injury is imminent, specifically "if the threatened injury

is certainly impending, or there is a substantial risk that the harm will occur")
(internal quotations omitted).

Hodl Law's claim is not ripe under either the constitutional or prudential
ripeness doctrines. The claim fails under the constitutional ripeness doctrine for
the same reasons Hodl Law lacks standing. *Thomas v. Anchorage Equal Rights
Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("The constitutional component of
the ripeness inquiry is often treated under the rubric of standing and, in many
cases, ripeness coincides squarely with standing's injury in fact prong."). The
claim fails under the prudential ripeness doctrine because the claim is not fit for
judicial decision since Hodl Law has not identified any SEC decision that it is
challenging. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir.
2000) ("'The core question is whether the agency has completed its
decisionmaking process, and whether the result of that process is one that will
directly affect the parties.'"). In addition, Hodl Law has not sufficiently identified
any hardship because it has not identified any imminent threat of enforcement.
*Thomas*, 220 F.3d at 1142 ("the absence of any real or imminent threat of
enforcement, particularly criminal enforcement, seriously undermines any claim of
hardship").

Finally, Hodl Law has no statutory basis for a claim against the SEC other
than the APA, but the district court would not have jurisdiction over an APA claim

because Hodl Law is not challenging final agency action.  Hodl Law has not

identified any action that concludes the SEC's decisionmaking process and

imposes rights or obligations.  *Am. Fin. Benefits Ctr. v. FTC*, No. 17-04817, 2018

WL 3203391, at *7 (N.D. Cal. May 29, 2018) (for an agency action to be final,

"two conditions must be satisfied: (1) 'the action must mark the consummation of

the agency's decisionmaking process—it must not be of a merely tentative or

interlocutory nature'; and (2) 'the action must be one by which rights or

obligations have been determined, or from which legal consequences will flow'").

    The district court also appropriately denied Hodl Law's request for leave to

file an amended complaint to add constitutional claims, as any amendment would

be futile.  Hodl Law's proposed constitutional claims would not resolve the lack of

standing and ripeness because they would do nothing to show that any injury is

imminent or that Hodl Law is challenging an SEC decision.

    Accordingly, the district court's dismissal of this action should be affirmed.

**ARGUMENT**

**I.    The district court properly dismissed Hodl Law's Declaratory
       Judgment Act claim for lack of subject matter jurisdiction.**

    "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian

Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause

lies outside this limited jurisdiction, and the burden of establishing the contrary

rests upon the party asserting jurisdiction." *Id.* (internal citation omitted). "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Mont. Env't Info.*, 766 F.3d at 1188. In addition, the statute governing federal question jurisdiction, 28 U.S.C. § 1331, provides jurisdiction only over those actions "arising under the Constitution, laws, or treaties of the United States."

Hodl Law brought this action under the Declaratory Judgment Act, but "[w]hile the Declaratory Judgment Act [ ] created a new procedural mechanism for removing the threat of impending litigation, it did not expand the jurisdiction of federal courts." *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014). That Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To maintain a lawsuit for declaratory relief under the Declaratory Judgment Act, the plaintiff must present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution. *See United States v. Schlenker*, 24 F.4th 1301, 1306 (9th Cir. 2022); *Shell*, 771 F.3d at 635 ("a federal court may only grant a declaratory judgment in 'controversies which are such in the constitutional sense'"). And "the operation of

the Declaratory Judgment Act is procedural only and does not confer arising under jurisdiction" to satisfy Section 1331. *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 543 (9th Cir. 2011) (internal quotations omitted); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("Act does not provide an independent jurisdictional basis for suits in federal court"). The Act "only permits the district court to adopt a specific remedy when jurisdiction exists." *Fiedler*, 714 F.2d at 79.

Despite its protestations to the contrary, Hodl Law cannot show that the district court has jurisdiction over its claim because Hodl Law does not have standing, its claim is not ripe, and it does not point to any authority that would provide it with a claim against the SEC, including the APA. Each of these deficiencies, by itself, provides a basis to find no jurisdiction.

### A. Hodl Law fails to plead standing.

To enforce Article III's limitation of federal court jurisdiction to actual cases or controversies, "the Supreme Court has articulated numerous doctrines that restrict the types of disputes that federal courts will entertain, including standing and ripeness." *Mont. Env't Info.*, 766 F.3d at 1188; *see also Coakley v. Sunn*, 895 F.2d 604, 606 (9th Cir. 1990) ("Article III of the United States Constitution limits our jurisdiction to actions involving actual 'cases' or 'controversies,' a limitation that manifests itself through the doctrine of standing."). "Ripeness and standing

are closely related because they 'originate from the same Article III limitation.'" *Mont. Env't Info.*, 766 F.3d at 1188.

To establish standing to pursue a claim under Article III, "a plaintiff must allege personal injury that is fairly traceable to defendant's allegedly unlawful conduct and that the requested relief is likely to redress." *Coakley*, 895 F.2d at 606. The plaintiff "must allege a distinct and palpable injury to himself; that the injury is somehow directly linked to the challenged activity; and that the injury is one which is apt to be redressed by a remedy the court is prepared to give." *Id*. Where an "alleged injury has not yet occurred," the court looks to whether an injury is imminent, specifically "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Mont. Env't Info.*, 766 F.3d at 1189 (internal quotations omitted).

Here, as the district court correctly concluded (1 ER 6-7), Hodl Law fails to identify a case or controversy between it and the SEC sufficient to demonstrate standing. Nowhere in Hodl Law's complaint does it allege that the SEC has investigated Hodl Law or prosecuted it for any reason or that the SEC is likely to do so in the future. *See* Complaint, Dkt. 6-3, 2 ER 18-39. Instead, Hodl Law's allegations concern the nature of crypto assets (*id*. at ¶¶ 22-27), the history and functioning of Ethereum (*id*. at ¶¶ 28-35, 40), Hodl Law's use of Ethereum and views of securities laws (*id*. at ¶¶ 42-64), and select information about public

statements by SEC officers and staff about crypto assets (*id*. at ¶¶ 65-100). Rather than identifying a specific dispute between it and the SEC, Hodl Law concedes that it is just like "literally millions of other [Ethereum] users worldwide." *Id*. at ¶6; *see also* Appellant's Br. at 13 (admitting it is just like "other U.S. users of the Ethereum Network"). Hodl Law guesses that if the SEC were to file suit against Hodl Law or another Ethereum network user, the value of Ether might drop (Appellant's Br. at 10), but, as the district court noted, this fear amounts only to a hypothetical harm (*see* 1 ER 13). *See also Longstreet Delicatessen, Fine Wines & Specialty Coffees, L.L.C. v. Jolly*, 1:06-CV-00986-OWW DLB, 2007 WL 2815022, at *18 (E.D. Cal. Sept. 25, 2007) (no actual injury where plaintiffs "offered no evidence that they have suffered economic harm by operation of the statute" at issue and "offered no evidence of actual harm suffered other than by potential lost sales"); *Amburgey v. CaremarkPCS Health, L.L.C.*, No. SACV 17-00183-CJC(KESx), 2017 WL 7806634, at *3 (C.D. Cal. Sept. 21, 2017) ("'alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk'"); *Mont. Shooting Sports Ass'n v. Holder*, CV-09-147-DWM-JCL, 2010 WL 3926029, at *13 (D. Mont. Aug. 31, 2010) (plaintiff's "ongoing and future economic harm" claims amounted to "nothing more than hypothetical lost profits from a hypothetical and illegal business enterprise" and were "far too speculative to constitute an injury in fact for purposes

of establishing standing"), *report and recommendation adopted*, 2010 WL 3909431 (D. Mont. Sept. 29, 2010).

Hodl Law's grievances in this case boil down to the alleged "lack of regulatory clarity posed by digital assets" and the SEC's purported "policy of regulation by lawsuit." Appellant's Br. at 17-24. Hodl Law's disagreement with the SEC in connection with digital assets, however, does not amount to a "distinct and palpable injury" sufficient to confer standing.

Hodl Law relies on the "firm prediction" rule to argue that "there is a substantial risk that injury will occur" to it due to the SEC's actions. S*ee* Appellant's Br. at 16-18. As the district court correctly observed (1 ER 13-14), the "firm prediction" rule is a "benefit-conferring rule," namely, "if it is inevitable that the challenged rule will operate to the plaintiff's disadvantage—if the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the challenged rule" then there may be a justiciable controversy. *Mont. Env't Info.*, 766 F.3d at 1190 (cleaned up and internal quotations omitted).

Hodl Law relies on two cases in support of its "firm prediction" rule argument, but Hodl Law is not like the appellants in those cases. Appellant's Br. at 16-17. First, in both cases, the plaintiffs submitted applications specific to a particular government agency responsible for processing those applications. *See*

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*, 306 F.3d 842, 862 (9th Cir. 2002) (appellees applied to Immigration and Naturalization Service ("INS") for adjustment of immigration status); *Chang v. United States*, 327 F.3d 911, 915-17 (9th Cir. 2003) (appellants submitted lawful permanent resident immigration applications to INS). Here, in contrast, Hodl Law admits that it submitted no "application" to the SEC about whether its use of the Ethereum network is permitted under federal securities laws because "none exist[s]." *See* Appellant's Br. at 17 ("there are no statutes, no regulations, and no formal policy statements that allow any member of the public to ascertain" the SEC's position on digital assets). Hodl Law complains that the SEC has not responded to its questions (*see, e.g.*, Appellant's Br. at 17), but Hodl Law has not identified any statute or other authority imposing any obligation on the SEC to respond to a private party's request for guidance about its own behavior.

Second, in the cases Hodl Law cited, the agency's actions directly impacted the appellants. *See Immigrant Assistance*, 306 F.3d at 862 (court could "firmly predict that the [federal government agency] will eventually deny these applications by 'virtue of the [rule challenged in the litigation]'"); *Chang*, 327 F.3d at 921 ("the INS ha[d] already failed to act upon Plaintiff's [ ] petitions within the 90-day period required by statute" and "[i]t is undisputed that Appellants' [ ] petitions will be rejected if the standards of the precedent decisions are applied to

them").  Here, contrary to its unsupported claim that the SEC will "civilly and criminally charge Hodl Law at its leisure" (Appellant's Br. at 17), Hodl Law has provided no evidence that the SEC is likely to file a case against it.  As the district court found (1 ER 6-7, 13-14), Hodl Law has not alleged that the SEC has communicated a specific warning to Hodl Law of investigation or prosecution for violations of federal securities laws or is likely to do so.[2]  Further, Hodl Law shows no evidence that the SEC has prosecuted a similarly situated entity for violations of federal securities laws.

Hodl Law refers to numerous SEC enforcement actions (some of which were not described in its complaint) that include allegations of unregistered offers or sales of securities (*see* Appellant's Br. at 18-22), but those actions were not brought against users of crypto assets like Hodl Law.  *See SEC Charges Former Coinbase Manager, Two Others in Crypto Asset Insider Trading Action*, U.S. SEC. & EXCH. COMM'N (July 21, 2022), https://www.sec.gov/news/press-release/2022-

---

[2] Hodl Law's worry that "evidence [of an SEC investigation] is unknowable" does not rise to the level of realistic danger that it will be the subject of an SEC action. Appellant's Br. at 18-19.  Further, Hodl Law differs significantly from the plaintiff in *LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) (Appellant's Br. at 19) because Hodl Law has not demonstrated that there is a realistic threat of enforcement against it or that its Constitutional rights may be infringed.  *See id.* at 1156 (state agency had previously "enforced or threatened to enforce" statute "against licensees involved with [plaintiff's erotic art] conventions" and plaintiff pled "chilling [of] its freedom of expression").

127 (action filed "against a former Coinbase product manager [Wahi], his brother, and his friend for perpetrating a scheme" involving fraud and insider trading); *SEC Charges Ripple and Two Executives with Conducting $1.3 Billion Unregistered Securities Offering*, U.S. SEC. & EXCH. COMM'N (Dec. 22, 2020), https://www.sec.gov/news/press-release/2020-338 (action filed against Ripple Labs Inc. and two executives for allegedly raising over $1.3 billion through an unregistered, ongoing digital asset securities offering); *SEC Charges New Hampshire Issuer of Digital Asset Securities with Registration Violations*, U.S. SEC. & EXCH. COMM'N (March 29, 2021), https://www.sec.gov/litigation/litreleases/lr-25060 (action filed against blockchain company LBRY for conducting unregistered offering of digital asset securities); *SEC Charges Kraken for Operating as an Unregistered Securities Exchange, Broker, Dealer, and Clearing Agency*, U.S. SEC. & EXCH. COMM'N (Nov. 21, 2023), https://www.sec.gov/litigation/litreleases/lr-25896 (action against entities operating online crypto asset trading platform as unregistered securities exchange, broker, dealer, and clearing agency); *SEC Files 13 Charges Against Binance Entities and Founder Changpeng Zhao*, U.S. SEC. & EXCH. COMM'N (June 5, 2023), https://www.sec.gov/news/press-release/2023-101 (action against crypto asset trading platform, affiliated entities, and their founder alleging, among other things, operating unregistered exchanges, broker-dealers, and clearing agencies;

19

misrepresenting trading controls and oversight; and unregistered offer and sale of securities); *SEC Charges Coinbase for Operating as an Unregistered Securities Exchange, Broker, and Clearing Agency*, U.S. SEC. & EXCH. COMM'N (June 6, 2023), https://www.sec.gov/news/press-release/2023-102 (action against crypto asset trading platform operator for, among other things, operating platform as an unregistered national securities exchange, broker, and clearing agency); *Sparkster to Pay $35 Million to Harmed Investor Fund for Unregistered Crypto Asset Offering*, U.S. SEC. & EXCH. COMM'N (Sept. 19, 2022), https://www.sec.gov/news/press-release/2022-167 (cease-and-desist order issued against entity and CEO for unregistered offer and sale of crypto asset securities and action against crypto influencer Balina for failing to disclose compensation he received for publicly promoting its tokens and failing to file a registration statement); *SEC Charges Crypto Asset Trading Platform Bittrex and its Former CEO for Operating an Unregistered Exchange, Broker, and Clearing Agency*, U.S. SEC. & EXCH. COMM'N (Apr. 17, 2023), https://www.sec.gov/news/press-release/2023-78 (action against crypto asset trading platform and its co-founder and former CEO for operating an unregistered national securities exchange, broker, and clearing agency); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 358 (S.D.N.Y. 2020) (action against entities for making unregistered offering of securities).

As a user of the Ethereum Network and Ether, Hodl Law is not like the parties against whom the SEC has brought enforcement actions. Hodl Law argues only that "the very nature of how the SEC asserts its self-granted authority to regulate digital assets vis-à-vis filing enforcement lawsuits is per se proof of Hodl Law's articulation of [a] concrete plan to violate" federal securities laws. Appellant's Br. at 22.[3] But Hodl Law is like the millions of users it points to who are not a party to an SEC enforcement action. Hodl Law does not say that it is planning to engage in action that will violate a law or show it is similar to the defendants in any SEC enforcement action.

In addition to failing to point to any relevant SEC enforcement actions, Hodl Law cites to inapposite cases. Unlike here, the plaintiffs in the cited cases identified an evident direct impact on them, a realistic threat of enforcement against them, or an infringement of their Constitutional rights. *See Wolfson v. Brammer*, 616 F.3d 1045, 1059-60 (9th Cir. 2010) (ripeness met where appellant intending to run for judicial office "established an intent to violate [Arizona Code

---

[3] Hodl Law argues that the SEC's "fail[ure] to disavow application of the Securities Act to the Ethereum Network" points toward standing (Appellant's Br. at 25-26) but does not explain how. Even if the federal securities require any particular entity or person to register offerings or sales of securities, that requirement would not necessarily render Hodl Law's use of the Network impermissible as the registration requirements do not apply to "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(1).

of Judicial Conduct] that is more than hypothetical" and First Amendment speech at issue because "[t]he Supreme Court has repeatedly pointed out the necessity of allowing pre-enforcement challenges to avoid the chilling of speech") (Appellant's Br. at 21); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1123 (9th Cir. 2009) ("appellees can point to specific past instances [of their conduct] . . . which are direct violations of the challenged rules," one appellee was "forced to leave her job," and another appellee was "in danger of termination") (Appellant's Br. at 21); *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (plaintiff's "intended conduct arguably violate[d] the [Ohio State Dental] Board's regulations" and Board had "in the past threatened to enforce the regulations against" plaintiff via warning letters) (Appellant's Br. at 24); *LSO*, 205 F.3d at 1156 (state agency had previously "enforced or threatened to enforce" statute "against licensees involved with [plaintiff's erotic art] conventions" and plaintiff pled "chilling [of] its freedom of expression") (Appellant's Br. at 24); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) (appellant "allege[d] a personal injury that [was] traceable to the Department [of Interior]'s conduct: his feathers were confiscated by the agent at the powwow" for violations of federal law) (Appellant's Br. at 24); *Fordyce v. City of Seattle*, 55 F.3d 436, 440 (9th Cir. 1995) (concrete controversy existed where plaintiff arrested for alleged violation of state criminal statute and

there was uncertainty of future prosecution for right "to videotape and audiotape private persons on public streets") (Appellant's Br. at 25).

Finally, Hodl Law argues that it has standing because of "a First and Fifth Amendment violation of its constitutional rights." Appellant's Br. at 26-27. As Hodl Law itself acknowledges, and as the district court noted, its complaint includes no allegations of Constitutional violations. *See id.* at 26; 1 ER 9-10. Although Hodl Law asserts that its use of the Ethereum Network and Ether "is engaging in constitutionally protected commercial speech" (Appellant's Br. at 26-27), it does not have standing to bring a First Amendment claim because "in a pre-enforcement challenge to a speech regulation" a plaintiff must have an "actual or well-founded fear that the law will be enforced against it" (*see Twitter*, 56 F.4th at 1174), which, as discussed herein, Hodl Law has not shown in any regard, including in a way that would restrict its constitutionally-protected speech. *See also SEC v. Wall Street Publishing Inst., Inc.*, 851 F.2d 365, 372 (D.C. Cir. 1988) ("Where the federal government extensively regulates a field of economic activity, communication of the regulated parties often bears directly on the particular economic objectives sought by the government, and regulation of such communications has been upheld [as consistent with the First Amendment].") (internal citation omitted); *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1109

(D.C. Cir. 2011) ("Securities regulation involves 'a different balance of concerns' and 'calls for different applications of First Amendment principles.'").

Similarly, Hodl Law does not have standing to bring a Fifth Amendment claim because it has not alleged injury. Hodl Law guesses that, should the SEC declare Ether to be a security, Ether will "substantially drop in value and remain suppressed" (Appellant's Br. at 27), but Hodl Law has not alleged that it has suffered or is likely to suffer any financial damage as a result of SEC action, or how the SEC would thereby be appropriating Hodl Law's property for public use. *See, e.g.*, *PT Pukuafu Indah v. U.S. SEC*, No. 09-10943, 2009 WL 2923157, at *1 (E.D. Mich. Sept. 10, 2009) ("Plaintiffs fail to suggest how the Fifth Amendment applies to the circumstances alleged in their complaint as there is no indication that the SEC has appropriated their property for public use."). Furthermore, its sole cited case in support of its threadbare Fifth Amendment claim is inapposite. *See E. Enters. v. Apfel*, 524 U.S. 498, 529 (1998) (federal Coal Act constituted unconstitutional regulatory taking under Fifth Amendment because it "forced a considerable financial burden upon [petitioner] . . . on the order of $50 to $100 million").

Because Hodl Law "does not allege a substantial risk" that it has suffered or will suffer any injury as a result of SEC action, the Court "cannot characterize this dispute as a substantial controversy of sufficient immediacy and reality to warrant

24

the issuance of a declaratory judgment." *Mont. Env't Info.*, 766 F.3d at 1190

(cleaned up and internal quotations omitted).

### B. Hodl Law's claim is not ripe.

"The ripeness doctrine demands that litigants state a claim on which relief

can be granted and that litigants' asserted harm is 'direct and immediate' rather

than speculative or hypothetical." *Hillblom v. United States*, 896 F.2d 426, 430

(9th Cir. 1990). The purpose of the ripeness doctrine "is to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in

abstract disagreements over policy with other branches of the federal government."

*Id.* at 430 (internal quotations omitted). The ripeness inquiry contains a

constitutional component and a prudential component. *Thomas*, 220 F.3d at 1138.

Despite its protestations (*see* Appellant's Br. at 28-33), Hodl Law's claim is not

ripe under either component.

### 1. Hodl Law's claim is not constitutionally ripe.

"A dispute is ripe in the constitutional sense if it 'present[s] concrete legal

issues, presented in actual cases, not abstractions.'" *Mont. Env't Info.*, 766 F.3d at

1188. "In the context of a declaratory judgment suit, the inquiry depends upon

whether the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

(internal quotations omitted). "The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138. "[B]ecause the focus of [the Court's] ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." *Id.*

As the district court appropriately concluded (1 ER 8), Hodl Law's claim is not constitutionally ripe because there is no controversy between Hodl Law and the SEC. As discussed *supra*, Hodl Law alleges only an abstract concern that its use of the Ethereum Network and Ether will result in an SEC investigation of or enforcement action against Hodl Law.

### 2. Hodl Law's claim is not prudentially ripe.

In evaluating whether a claim is prudentially ripe, courts consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141 (internal quotations omitted). The district court correctly concluded that Hodl Law's claim meets neither prerequisite. 1 ER 10-14.

***Fitness for judicial decision.*** An agency's action is appropriate for review if "the issues presented are purely legal and the regulation at issue is a final agency action." *Ass'n of Am. Med. Colls*, 217 F.3d at 780 (internal quotations omitted). "An administrative action is fit for judicial review when an agency's decision is at

an 'administrative resting place.'" *Blumenkron v. Eberwein*, 715 F. App'x 633, 635 (9th Cir. 2017). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Ass'n of Am. Med. Colls.*, 217 F.3d. at 780 (internal quotations omitted). The district court correctly found that "[w]hether the Ethereum Network and Ether DCU's are securities is a purely legal question not fit for review until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." 1 ER 10 (internal quotations omitted). The district court concluded that there is no sufficient final agency action here. *See* 1 ER 10-12.

The gravamen of Hodl Law's case is that the SEC has not completed a decisionmaking process concerning whether transacting on the Ethereum network implicates federal securities laws. *See, e.g.*, Appellant's Br. at 5 ("Presently, the SEC refuses to state . . . whether it now considers the network or DCU a security."), 29-31 (noting "the SEC's clear decision to simply never engage in any formal policy decision-making on Ethereum"). Without a final agency decision, judicial intervention is inappropriate. *See, e.g.*, *Ass'n of Am. Med. Colls.*, 217 F.3d at 782 (dispute not ripe where agency in process of auditing plaintiffs prior to any final action); *Minn. Auto Dealers Ass'n v. Minnesota*, 520 F. Supp. 3d 1126, 1140

(D. Minn. 2021) (dispute not ripe where "administrative rules . . . have not been adopted, have not taken effect, and have not been enforced" and "alleged injuries depend on contingent future events that may not occur as anticipated, if at all"); *New Jersey v. U.S. HHS*, No. 07-4698 (JAP), 2008 WL 4936933, at *13 (D.N.J. Nov. 17, 2008) (dispute not ripe where plaintiff "merely fears potential future administrative action and the dispute between the parties is contingent upon events that may not occur at all or may occur differently than anticipated") (cleaned up and internal quotations omitted).

Hodl Law points to an SEC speech and discussions about that speech to argue that the SEC has made a final decision about the federal securities laws' application to the Ethereum Network. *See* Appellant's Br. at 29-30. As the district court found (1 ER 12), those documents do not show that the SEC has issued any such final decision. The SEC is led by five Commissioners, and final agency action occurs by a vote of its Commissioners or by delegating authority to an SEC division, individual Commissioner, administrative law judge, or employee. *See* 15 U.S.C. §§ 78d & 78d-1; 17 C.F.R. §§ 200.40 *et seq*. & 200.400 *et seq*. Hodl Law presents no evidence of any vote, either formal or informal, by the Commissioners and does not point to any delegation to the Chairman or to the Director of the Division of Corporation Finance that would enable them to decide what constitutes a security. *See* 17 C.F.R. § 200.30-1 (listing authority delegated to the Director of

the Division of Corporation Finance); 17 C.F.R. § 200.735-4(d)(2)(ii)(A) (speeches by Commission employees must include disclaimer that they do not necessarily reflect Commission's views).

Further, Hodl Law relies on an inapposite case (Appellant's Br. at 28, 30) in which "Plaintiffs' claims arise from an enforcement action that ha[d] already occurred" against plaintiffs. *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012). Unlike in this case where Hodl Law has not alleged that it has been investigated or prosecuted for violating federal securities laws, in *Oklevueha*, "the [Controlled Substances Act] ha[d] already been enforced against Plaintiffs" and plaintiffs had violated that federal law "countless times, and plan[ned] to continue to do so." *Id*. at 836, 837. As discussed *supra*, Hodl Law, who alleges that it is an Ethereum Network user, is not like the targets of SEC investigations and enforcement actions who, among other things, allegedly commit fraud and offer and sell securities without registration.[4]

---

[4] Hodl Law's additional cited case (Appellant's Br. at 31) is factually distinguishable because, unlike Hodl Law, appellant there had already suffered an injury in fact because the appellant's new health care coverage mandated by a state agency's directive controverted its religious beliefs. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747-48 (9th Cir. 2020) (noting that "[t]his case contrasts sharply with . . our caselaw addressing preenforcement challenges to the application of rules or statutes" because "this case involves a postenforcement challenge: the [state agency] told seven insurers that they were required to immediately change their coverage, and all of them (including [appellant's] insurer) have already complied").

Hodl Law misunderstands the burden of proof in this case by arguing repeatedly, and without supporting authority, that the SEC must identify a "method available to Hodl Law to receive an answer to its questions regarding the agency's actual beliefs over its authority to regulate the Ethereum Network and Ether DCU." Appellant's Br. at 30-31. Hodl Law, however, points to nothing that requires the SEC to respond to all legal issues that persons bring to it or that requires the SEC to promulgate a rule that answers Hodl Law's questions. *See* District Court Order, 1 ER 7 ("Plaintiff does not identify any authority compelling Defendant to engage in specific rulemaking, pursue specific regulatory approaches, or respond to private parties' requests for guidance"). The relevant burden of proof is for Hodl Law to establish that it is presenting a claim that is fit for review, and it fails to do so.

*Hardship.* The district court appropriately found that Hodl Law would not suffer hardship in the absence of a court order. 1 ER 13. The "hardship" prong of the ripeness analysis addresses whether "delayed [judicial] review will cause any real cognizable hardship." *Nat. Res. Def. Council v. Abraham*, 388 F.3d 701, 707 (9th Cir. 2004). As the district court observed (1 ER 12), hardship "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Id*. at 706. "[T]he absence of any real or imminent threat of enforcement, particularly criminal

enforcement, seriously undermines any claim of hardship." *Thomas*, 220 F.3d at 1142.

Hodl Law complains that "[t]he value of Hodl Law's Ether DCU and its ability to transact on the Ethereum Network would be substantially impaired, if not altogether wiped out, if the SEC subjectively decides to file an enforcement action." Appellant's Br. at 32. Even more speculative are Hodl Law's unsupported claims that it will be harmed "in the metaverse," "build[ing] its brand and strengthen[ing] its reputation," and in a hypothetical state bar disciplinary action or incurring "career-ending sanctions." *Id.* at 33.

Hodl Law's general concern that a case alleging offers and sales of Ether are offers or sales of securities could impact its financial holdings and reputation does not constitute a significant, practical harm. *See Blumenkron*, 715 F. App'x at 635-36 (no hardship where appellants alleged "nothing more than 'possible financial loss'" from property value decrease and no evidence in record that appellants, among other things, planned to sell land at issue and thereby suffered damages); *Physicians for Integrity in Med. Rsch., Inc. v. Hamburg, Comm'r, FDA*, No. LA CV14-00755 JAK (JCx), 2014 WL 12591629, at *4 (C.D. Cal. Oct. 23, 2014) ("claims of wasted time, loss of credibility, and fear of losing patients cannot establish an injury in fact that is 'concrete and particularized' and 'actual or imminent'"). It is far from certain that the SEC will initiate an enforcement action

involving the Ethereum Network or Ether, that Hodl Law will continue to hold Ether at the time any potential enforcement action is brought, that a potential lawsuit would "wipe[] out" the value of any Ether Hodl Law may hold, or that Hodl Law would suffer "economic damage" or "irreparable harm" from these events. *See Amtax Holdings 260, LLC v. Washington State Hous. Fin. Comm'n*, No. 21-35789, 2022 WL 2953701, at *2 (9th Cir. July 26, 2022) (no hardship in delaying review of First Amendment claim where "[n]othing in the amended complaint establishes a 'well-founded fear that the law will be enforced against [appellants]'" and no evidence that government policy "requires an immediate change to its conduct").

Hodl Law's cited cases (Appellant's Br. at 31-32) are readily distinguishable from the present case. *See Stormans*, 586 F.3d at 1121 (appellee store injured by state rules requiring it to stock Plan B despite religious objections and pharmacist appellees injured because one expected to be fired and other was forced to leave job because of religious convictions); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 164 (2014) (petitioner organization alleged injury in fact where court found substantial threat of future enforcement because there was "history of past enforcement" against petitioner for "the same conduct" and petitioner alleged intention to engage in same conduct); *Full Circle of Living & Dying v. Sanchez*, No. 2:20-CV-01306 KJM KJN, 2020 WL 7714200, at *1, *4 (E.D. Cal. Dec. 28,

2020) (state agency issued plaintiffs formal notice of citation and threatened fines and prosecution for noncompliance with state law); *Doe v. Aetna, Inc.*, No. 14cv2986-LAB (DHB), 2016 WL 1028363, at *1 (S.D. Cal. Mar. 15, 2016) (under health insurance policy change, plaintiffs would have been forced "to obtain HIV and AIDS medications through the mail" which raised "health and privacy" concerns; it "would cost them thousands of dollars each month if they chose to get their medications at their community pharmacy instead of through the mail"). Should the Court not grant Hodl Law the relief it seeks at this time, it is purely speculative that Hodl Law would suffer any hardship.

### C. Hodl Law fails to identify any authority providing it with a claim against the SEC, and the APA does not bridge this gap.

Hodl Law seeks a declaratory judgment without pointing to any statute or other authority that would provide it with a claim against the SEC. *See* Appellant's Br. at 34-38. The only possible basis for Hodl Law's claim is the APA because the Complaint does not describe any Constitutional right or any other statutory or common law right. The APA provides a vehicle for claims against federal agencies when no other statutory process exists. *General Finance Corp. v. FTC*, 700 F.2d 366, 372 (7th Cir. 1983) ("jurisdiction of the federal courts to review administrative action is codified in the Administrative Procedure Act"). A party "'may not bypass the specific method that Congress provided for reviewing

adverse agency action,' i.e., the APA, simply by suing the agency in district court under general jurisdiction statu[t]es such as 28 U.S.C. § 1331." *Am. Fin. Benefits Ctr.*, 2018 WL 3203391, at *5. "[B]are citation to [28 U.S.C. §§ 1331 and 2201] is insufficient to establish jurisdiction." *Id.* (quoting *General Finance Corp.*, 700 F.2d at 368). But, as the district court found, Hodl Law "cannot bring the present claims pursuant to the APA." 1 ER 15.

The APA permits judicial review of two categories of agency conduct: (1) "[a]gency action made reviewable by statute"; and (2) "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Hodl Law cannot satisfy either of these requirements. First, the Complaint does not, and cannot, identify a statute that provides for judicial review of the SEC's purported action (or inaction) concerning the Ethereum network or Ether. Second, there is no final agency action.[5] For an agency action to be final, "two conditions must be satisfied: (1) 'the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature'; and (2) 'the action must be one by which rights or obligations have been

---

[5] The Ninth Circuit has held that the APA's final agency action requirement is jurisdictional. *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1161 (9th Cir. 2018); *Am. Fin. Benefits Ctr.*, 2018 WL 3203391, at *5, *6.

determined, or from which legal consequences will flow.'" *Am. Fin. Benefits Ctr.*, 2018 WL 3203391, at *7.

Hodl Law does not identify any final agency action. Instead, the Complaint alleges that the SEC has not taken a final action providing its view of Ethereum or Ether under federal securities laws. *See, e.g.*, Complaint, 2 ER 29-37, ¶ 66 (SEC has not yet "promulgated one regulation, rule or even an official statement that the Ethereum Network or the Ether DCU were (in Defendant's eyes) securities under the Securities Act"), ¶ 67 (SEC purportedly "has engaged in purposeful, public ambiguity"), ¶ 73 (SEC Chair "Gensler has never clarified whether his public musings about the security status of [Ethereum and Ether] are his personal opinion or" SEC policy), ¶ 101 ("Defendant has filed multiple civil actions against multiple defendants, alleging unlawful securities transactions stemming from DCUs used on the Ethereum Network"). The Complaint also alleges that the SEC has not provided Hodl Law with any "assurances" related to Hodl Law's use of the Ethereum network. *See id*. at ¶ 106. Thus, Hodl Law's own allegations make clear that the SEC has not reached a final decision about the Ethereum network or Ether.

Finally, to the extent the Complaint may be construed to make a claim based on agency inaction under 5 U.S.C. § 706(1), Hodl Law's allegations again fall short. When a plaintiff seeks to challenge agency inaction, the APA authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably

delayed." 5 U.S.C. § 706(1). "The Supreme Court has held, as a matter of subject matter jurisdiction, that a claim based on agency inaction under 5 U.S.C. § 706(1) 'can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take.'" *Bush v. U.S. HHS*, No. 21-cv-06055-JCS, 2021 U.S. Dist. LEXIS 168285, at *6-7 (N.D. Cal. Sept. 4, 2021) (emphasis in original) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)). APA Section 706(1) "does not permit broad programmatic attacks." *Id.* (internal quotations omitted). Here, Hodl Law has not identified any duty the SEC may have to promulgate rulemaking relating to Ethereum or to respond to Hodl Law's individual inquiries about its own use of Ethereum. As such, Hodl Law seeks judicial review of SEC actions that are not "final" within the meaning of the APA. Hodl Law's failure to meet that threshold APA requirement deprives this Court of jurisdiction.

On appeal, Hodl Law does not attempt to argue that it can bring a claim under the APA. Instead, Hodl Law argues that the SEC lacks authority in the crypto assets space. *See* Appellant's Br. at 34-38 (arguing that "under the major questions doctrine, the SEC has no jurisdiction over a software network"). Hodl Law claims that "the SEC has no jurisdiction over Hodl Law's use of the Ethereum Network" and complains that the SEC "cannot point to [a] single federal statute authorizing" the SEC's "jurisdiction over the trillion-dollar-plus digital asset

industry." Appellant's Br. at 35. The issue before the Court, however, is not whether the SEC may regulate crypto assets on an industry wide scale or in an individual user's transactions. Rather, the issue is whether Hodl Law has identified any statute or authority that provides it with a claim against the SEC. Hodl Law has not done so.

Hodl Law's cited cases are inapposite because they only glancingly address standing and focus instead on government agency authority, which is not at issue here. Specifically, Hodl Law relies on *West Virginia v. EPA*, 142 S. Ct. 2587 (2022) (Appellant's Br. at 35-36, 38), but there the Supreme Court considered whether the Clean Air Act granted the Environmental Protection Agency the authority to issue a particular rule about power plant emissions that it had previously promulgated as a final agency action. *Id.* at 2599. As Hodl Law itself recognizes (*see* Appellant's Br. at 35), the Supreme Court there found "there can be 'little question' that the [agency's] rule does injure the States [petitioners], since they are 'the object of' its requirement that they more stringently regulate power plant emissions within their borders." *West Virginia*, 142 S. Ct. at 2606. As discussed *supra*, Hodl Law has not explained how any SEC rule, or lack thereof, has actually injured Hodl Law, including by imposing any requirement on Hodl Law that is comparable to the requirement imposed on the petitioners in *West Virginia*. Hodl Law also cites *Biden v. Nebraska*, 143 S. Ct. 2355 (2023)

(Appellant's Br. at 36), but that case addressed whether the Secretary of Education's student loan forgiveness program was permissible under federal law. *See id.* at 2362, 2365-66 (finding standing where program would have cost state nonprofit government corporation $44 million a year in fees).  Furthermore, in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (Appellant's Br. at 36), the Supreme Court did not address standing, ripeness, or the court's jurisdiction but rather whether the Food and Drug Administration had authority to regulate tobacco products.

## II.  The district court correctly denied Hodl Law's request for leave to file an amended complaint.

Hodl Law maintains that the Court should "grant Hodl Law leave to amend the Complaint to specifically plead [First and Fifth Amendment] constitutional violations."  Appellant's Br. at 39.  As the district court appropriately found (1 ER 15), Hodl Law should not be permitted to amend its complaint because any amendment would be futile.

"It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."  *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990.  Even with an opportunity "to more explicitly assert its allegations that declaratory relief is required by Hodl Law's First and Fifth Amendment rights" (Appellant's Br. at 40), Hodl Law will be unable to satisfy its burden to show that

this Court has subject matter jurisdiction.  As discussed above (*see supra* Part I.A), Hodl Law would not have standing to bring claims under the First and Fifth Amendments based on the hypothetical possibility that the SEC may bring a claim against it because those claims would not somehow resolve its failure to allege a substantial risk or to show that it has suffered or will suffer any injury as a result of SEC action.  Similarly, claims under the First and Fifth Amendments would not be ripe for the same reason Hodl Law's current claims are not ripe.  Hodl Law has not identified any final agency decision that is fit for judicial review and has not identified any immediate, direct, and significant harm.

The cases that Hodl Law cites to support its request for leave to amend do not help it.  *See* Appellant's Br. at 39.  Those cases either are factually inapposite or support the district court's statement that leave to amend is not necessary when, as here, amendment would be futile.  *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) ("Plaintiffs have not shown, either in their briefing or at oral argument, how they could amend their complaint to remedy the many legal deficiencies in their claims."); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (remanding to district court issue of whether to grant leave to amend in light of "potential impact" of recent Supreme Court decision, which district court subsequently denied, and noting "it is clear that granting leave to amend would have been futile," and "[t]he fact that the district

court did not so state specifically is not a basis to reverse the district court"), *mot. for leave to amend denied*, 2005 U.S. Dist. LEXIS 4875 (N.D. Cal. March 21, 2005); *AE v. County of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012) (district court abused discretion by dismissing Section 1983 claim for violations of Fourteenth Amendment where briefing on appeal was completed before Circuit issued decision in which it "identified and addressed conflicts in the Supreme Court's recent jurisprudence on the pleading requirements applicable to civil actions" as well as state law claims where district court committed legal error by "conflat[ing] [plaintiff's] direct and derivative liability claims" and dismissing the latter).

### CONCLUSION

For the foregoing reasons, the order of the district court dismissing this action should be affirmed.

Respectfully submitted,

MEGAN BARBERO
General Counsel

ELIZABETH MCFADDEN
Deputy General Counsel

TRACEY SASSER
Associate General Counsel

MELINDA HARDY
Assistant General Counsel

/s/ *Alexandra Verdi*
ALEXANDRA VERDI
Attorney

U.S. Securities and Exchange
Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5057 (Verdi)
verdim@sec.gov

January 29, 2024

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 9,326 words, excluding the parts of the brief exempted by Fed. R. App. 32(f).

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface—Times New Roman, at least 14 point—using Microsoft Word.

Dated: January 29, 2024

*/s/ Alexandra Verdi*
Alexandra Verdi

**CERTIFICATE OF SERVICE**

I, Alexandra Verdi, hereby certify that, on January 29, 2024, I caused to be served by CM/ECF the Brief of the U.S. Securities and Exchange Commission, Appellee, in *Hodl Law, PLLC v. SEC, et al.*, No. 23-55810, on all CM/ECF participants.

*/s/ Alexandra Verdi*
Alexandra Verdi

## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

| Docket Entry Number | Description | Excerpts of Record Volume and Page Number |
|---|---|---|
| 6-2 | Order Granting Defendant Securities and Exchange Commission's Motion to Dismiss Complaint | 1 ER 2 – 1 ER 16 |
| 6-3 | Complaint | 2 ER 18 – 2 ER 39 |
| 6-3 | SEC's Motion to Dismiss | 2 ER 40 – 2 ER 67 |
| 6-3 | SEC's Reply Brief in Support of Motion to Dismiss | 2 ER 100 – 2 ER 112 |
| 6-3 | Hodl Law's First Notice of Supplemental Authority and Exhibits | 2 ER 113 – 2 ER 262 |
| 6-3 | SEC's Response to Hodl Law's First Notice of Supplemental Authority | 2 ER 263 – 2 ER 267 |
| 6-3, 6-4 | Hodl Law's Second Notice of Supplemental Authority and Exhibits | 2 ER 268 – 3 ER 336 |
| 6-4 | SEC's Response to Hodl Law's Second Notice of Supplemental Authority | 3 ER 337 – 3 ER 341 |
| 6-4 | Hodl Law's Notice of Appeal and Exhibit | 3 ER 342 – 3 ER 364 |